John Hardie ROGERS a/k/a Big John, Appellant,

v.

The STATE of Texas, Appellee.

Nos. C14–89–00429–CR, C14–89–00579–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 5, 1993.

Tom Donald Moran, Houston, for appellant.

Linda A. West, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION ON REMAND

CANNON, Justice.

A jury convicted Rogers of possession of methamphetamine and two counts of burglary of a habitation. The jury assessed punishment at twenty years and a fine of $10,000 for the possession offense and thirty years for each of the burglary offenses. On appeal to this court, Rogers complained *inter alia* that the trial court improperly admitted extraneous offense evidence during the guilt/innocence phase of trial. We affirmed. Rogers obtained discretionary review. The Court of Criminal Appeals reversed our judgment and remanded the cause to us for a harm analysis. We affirm in part, reverse and remand in part.

Rogers' convictions arose from events surrounding the execution of an arrest warrant in January 1989. At approximately 8:00 p.m., four officers of the Major Offenders Bureau of the Houston Police Department served an arrest warrant on Rogers for a burglary unrelated to the currently charged offenses. Upon entering Rogers' house, one of the officers observed Rogers in the living room talking with several other people. Rogers quickly placed a package between the cushions of the couch on which he was sitting. The package contained approximately 0.59 grams of methamphetamine.

Two of the officers took Rogers into the kitchen, showed him the arrest warrant, and

informed him of his legal rights. Meanwhile, police searched the house and recovered approximately 127.3 grams of marijuana from between a mattress and box springs in a rear bedroom. Rogers admitted to the officers that the methamphetamine and marihuana were his.

Police interviewed Rogers at the police station. He signed a voluntary written confession in which he admitted numerous burglaries. After signing the confession, Rogers and two of the officers drove to the locations of some of the burglaries. During this ride, Rogers pointed out several homes that he had burglarized and described to the officers some of the items that he had taken from each residence. The officers checked police records of reported burglaries and confirmed that the houses identified by Rogers had indeed been recently burglarized and the items that he named stolen.

At trial, the State offered Rogers' written confession. Rogers objected to the following portion of the confession as constituting irrelevant extraneous offense evidence:

> I also had in my possession at my residence a quantity of marijuana approximately four ounces. I had put it in my mother's bedroom. I am a marijuana user and sell small quantities of it. I am also a methamphetamine dealer and sell quarter grams to finance my methamphetamine habit.

The State also offered testimony describing the recovery of the marijuana, Rogers' oral statement that the marijuana belonged to him, the chemical analysis of the marijuana, and the marijuana itself.

The State argued that Rogers' statements regarding his methamphetamine habit were admissible to show motive to commit the burglaries and that all the evidence pertaining to the marijuana was *res gestae* of the arrest. The trial court overruled Rogers' objections and admitted the confession in its entirety as well as the marijuana-related evidence.

On appeal to this court, we agreed with the State's admissibility arguments and affirmed Rogers' convictions. *Rogers v. State*, Nos. C14–89–00429–CR & C14–89–00579–CR (Tex.App.—Houston [14th Dist.] January 25, 1990) (not designated for publication), 1990 WL 4645.

Rogers obtained discretionary review, and in *Rogers v. State*, 853 S.W.2d 29 (Tex.Crim. App.1993), the Court stated:

> We hold that the evidence concerning the marijuana was not "necessary" to the jury's understanding of the offenses of burglary and possession of methamphetamine and was therefore not admissible as same transaction contextual evidence under Rule of Criminal Evidence 404(b). The court of appeals erred in holding that such evidence was admissible as "res gestae" of the offense.

*Id.* at 34 (footnote omitted).

The Court also "reject[ed] the State's argument that [Rogers'] confessed use and sale of methamphetamine was admissible to show "motive" to commit the burglaries under Rule of Criminal Evidence 404(b)." *Id.* at n. 8. The Court had "previously held such arguments to be overly speculative and without merit." *Id.*

The Court reversed our judgment and remanded the cause to us for a harmless error analysis. *Id.* at 35; *see* Tex.R.App.P. 81(b)(2).

■ In conducting a harm analysis, we are obliged "to examine the entire record in a neutral, impartial and even-handed manner...." *Harris v. State*, 790 S.W.2d 568, 586 (Tex.Crim.App.1989). We are to "calculate as much as possible the probable impact of the error on the jury in light of the existence of the other evidence." *Id.* at 587. We are concerned with "the integrity of the process leading to the conviction[s]." *Id.*

■ We consider the following factors: (1) the source and nature of the error, i.e., whether the State intended to taint the process of evidence evaluation by the jury, (2) whether the error was emphasized by the State, (3) the probable collateral implications of the error, (4) the weight the jury would probably place on the error, and (5) whether finding the error harmless would encourage the State to repeat it with impunity. *Id.*

In sum, we isolate the error and all its effects and then ask whether a rational trier of fact might have reached a different result if the error had not been committed. *Id.* at 588.

### Marijuana Evidence as *Res Gestae*

Source and Nature of Error. At time of trial, caselaw arguably supported the admission of the marijuana-related evidence. *See, e.g., Wilkerson v. State,* 736 S.W.2d 656, 664 (Tex.Crim.App.1987) (in possession of phenmetrazine case, evidence of hydromorphone possession admissible as *res gestae*) *and Hoffert v. State,* 623 S.W.2d 141, 144 (Tex.Crim.App.1981) (extraneous transaction admissible to show context in which instant offense occurred). The court did not have the benefit of *Mayes v. State,* 816 S.W.2d 79, 84–87 (Tex.Crim.App.1991), which clarified the standard of admissibility for "background" evidence (formerly *"res gestae"*). *Mayes* distinguished "background contextual" evidence (inadmissible) from "same transaction contextual evidence" (admissible). *Id.* at 86–87. Under *Mayes,* the marijuana evidence would have been "background contextual" and inadmissible.

Therefore, at time of trial, the principle of law involved in the trial court's ruling was not as well-settled as today. We find it unlikely that the State, in offering the marijuana evidence, did so with the intent to taint the trial. *Cf. Higginbotham v. State,* 807 S.W.2d 732, 735 (Tex.Crim.App.1991) (in obtaining confession, violation of defendant's well-settled right to counsel to prevent self-incrimination was offensive and harmful error). We find that this factor weighs in favor of a finding of no harm.

Emphasis by the State. The State introduced the marijuana-related evidence, namely: (1) arresting officer testimony that police found marijuana in the house, (2) testimony by the State's chemist verifying a positive test for marijuana, (3) Rogers' on-scene, oral statement that the marijuana was his, (4) Rogers' written statement containing his admission that the marijuana was his, that he was a marijuana user, and that he sold small quantities, and (5) the seized marijuana itself. Beyond the actual introduction of the evidence, the State made only cursory reference to the marijuana in its opening argument and no reference to it whatsoever in its closing arguments in both the guilt/innocence and punishment phases of trial. We find that there was no "obvious effort" to cause the jury to place undue weight on the marijuana evidence. *Cf. id.* This factor weighs in favor of a finding of no harm.

Probable Collateral Implications. The marijuana evidence did not serve to "disparage a sole defense" as in *Higginbotham. Higginbotham,* 807 S.W.2d at 737. However, in his closing argument at the guilt/innocence stage, the prosecutor stated: "And [the police] got a bad man, and I would ask you . . . to . . . say, 'Mr. Rogers, you are a bad man. You are guilty of these crimes.'" A danger exists that the jury could have considered the marijuana evidence, cumulatively with the other evidence, and convicted Rogers because they thought him a "bad man" generally.

We also note a possible effect of the marijuana evidence on sentencing. *See id.* The State abandoned the enhancement paragraphs of the indictment, but introduced evidence of three prior convictions for possession of cocaine, delivery of cocaine, and robbery by assault. For the methamphetamine possession offense, the jury sentenced Rogers to the maximum prison time of twenty years (possible range of two to twenty years) and imposed the maximum fine of $10,000. We cannot say that this stiff sentence was not due, in part at least, to the introduction of the marijuana evidence. This factor favors a finding of harm.

Weight Probably Placed by Jury on Error. The record reflects that the jury, during deliberations, sent a request to the trial court for Rogers' written statement and for the marijuana physical evidence. We know, therefore, that the marijuana was of at least some interest to the jury.

However, we also know that the State presented a considerable body of evidence supporting both the methamphetamine possession and burglary charges. An officer testified that police saw Rogers push a package into the cushions of the couch where he

sat when the police entered the house. Another officer recovered the package from the couch. The contents of the package tested positive for methamphetamine. Rogers admitted at the scene that the methamphetamine was his. In his written statement, he admitted that he pushed the package of methamphetamine into the couch.

The State's evidence against Rogers on the burglary offenses was also strong. Rogers' confession detailed residences and businesses he burglarized, described methods of entry, and listed stolen items. Rogers rode with the police and pointed out some of the residences he burglarized. Police matched Rogers' admissions with police offense reports. Police traced two items of stolen property to Rogers.

"If overwhelming evidence dissipates [an] error's effect upon the jury's function in determining the facts so that it did not contribute to the verdict then the error is harmless." *Harris*, 790 S.W.2d at 587. Regarding Rogers' guilt/innocence, we find it probable that the impact of the marijuana evidence was buffered by the other evidence to such an extent that the effect of the marijuana evidence was *de minimis*.

However, regarding Rogers' sentencing, we deem it probable that the jury considered the marijuana evidence in assessing the maximum sentence for the methamphetamine possession offense. Also, we can not dismiss the possibility that the improperly admitted evidence caused the jury to impose a more severe sentence than otherwise for the burglary offenses—the jury sentenced Rogers to thirty years for each burglary offense when the possible punishment was from five years to life and a $10,000 fine.

We find that this factor weighs in favor of no harm as to guilt/innocence but harm regarding punishment.

Encouragement to the State to Repeat Error. In *Higginbotham*, the court stated: "As a practical matter, prosecutors in their roles as advocates for the State, will continue to seek admission of extraneous offenses during the guilt/innocence phase of trial, and often it will be successful because of the great leeway provided by the exceptions to Tex.R.Crim.

Evid. 404(b)." *Higginbotham*, 807 S.W.2d at 737–38. "[T]he risk of the State repeating the error in direct response to this Court's holding [is] minute." *Id.*

We also note that *Mayes* clarified the standard of admissibility for background evidence (*res gestae*). With clearer guidelines, the likelihood of prosecutorial abuse is lessened. *See Mayes*, 816 S.W.2d at 84–87. We find that this factor favors no harm.

In sum, weighing all of the above factors, we find beyond a reasonable doubt that a rational trier of fact would not have reached a different result as to Rogers' guilt because of the erroneously introduced marijuana evidence. *See Harris*, 790 S.W.2d at 588. However, we cannot say beyond a reasonable doubt that a rational trier of fact might not have reached a different assessment of Rogers' punishment. *See id.*

### Methamphetamine Habit Evidence as Motive for Burglaries

■ Source and Nature of Error. The State introduced Rogers' written confession wherein he stated that he was a "methamphetamine dealer and [sold] quarter grams [of methamphetamine] to finance [his] methamphetamine habit." Rogers was not charged with dealing methamphetamine. The State justified the evidence to the trial court as probative of Rogers' motive for committing the burglaries, i.e., to finance his drug habit.

The State's attempt to introduce this "motive" evidence was more culpable than was its attempt to admit the marijuana evidence. The state of the law was more settled in this area. In *Powell v. State*, 478 S.W.2d 95 (Tex.Crim.App.1972), the Court spoke on the issue of the use of a defendant's drug use to prove motive in a theft case:

There was no evidence how often [the accused] took narcotics, or what the maintenance of such a habit would cost him, or that he was unable to obtain narcotics because of a shortage of money. In effect the evidence only shows that he *might* have lacked the money and therefore might have had a motive to commit the crime.... We think this is too remote; the *need for money being speculative the*

motivation can be no better. Whatever probative value this evidence had, it was outweighed by its prejudicial effect. It would place far too much stress on the mere fact of his addiction alone.

*Id.* at 98, quoting *United States v. Mullings,* 364 F.2d 173, 175 (2nd Cir.1966) (emphasis in original).

Presuming that the prosecutor knew this principle of law at the time he attempted to introduce this evidence, we can infer that the attempt may have been designed to expose the jury to Rogers' drug use and trafficking activity to embellish the "bad man" characterization raised by the prosecutor in final argument. We find that this factor weighs in favor of a finding of harm.

Emphasis by the State. In opening argument, the State briefly referred to Rogers' drug habit as a motivating factor in the burglaries. The State did not mention this theory in closing argument. We find that the State did not unduly emphasize the motivation evidence. This factor favors a finding of no harm.

Probable Collateral Implications. As with the marijuana evidence, we believe that the primary effect of the methamphetamine habit and dealer evidence was to round out the State's "bad man" characterization of Rogers. We also note the probable effect of the evidence on sentencing. We find that this factor weighs in favor of harm.

Weight Probably Placed by Jury on Error. The jury sent a request to the trial court for Rogers' confession which contained the objected-to statements on Rogers' methamphetamine habit and dealing. Still, as discussed earlier, the evidence of Rogers' guilt on all charges was very strong. As with the marijuana evidence, we find that the impact of the methamphetamine habit and dealing evidence was attenuated by the existence of other extensive evidence of Rogers' guilt. On the other hand, we do believe that Rogers' sentencing may have been influenced by this evidence.

We find that this factor weighs in favor of no harm as to guilt/innocence but harm regarding punishment.

Encouragement to the State to Repeat Error. For this court to find the admission of this "motive" evidence harmless would tend to undermine the clear position taken by the Court of Criminal Appeals in *Powell.* We find that this factor favors a finding of harm.

In sum, weighing all of the above factors, we find beyond a reasonable doubt that a rational trier of fact would not have reached a different result on Rogers' guilt because of the erroneously introduced methamphetamine habit and dealer evidence. However, we cannot say beyond a reasonable doubt that a rational trier of fact might not have reached a different assessment of Rogers' punishment.

### Conclusion

We find beyond a reasonable doubt that the erroneously admitted evidence did not contribute to Rogers' guilty verdicts. *See* TEX.R.APP.P. 81(b)(2). However, considering the likely cumulative and synergistic effect of the inadmissible marijuana and methamphetamine evidence, we find that the jury's assessment of Rogers' punishment may have been tainted. Therefore, we affirm the judgment below as to Rogers guilt, reverse the judgment on punishment, and remand the cause to the trial court for a new punishment hearing.

Affirmed in part, reversed and remanded in part.

BOWERS, J., not participating.