Deangelo ALLEN *v.* STATE of Arkansas

CR 95-1042                                        918 S.W.2d 699

Supreme Court of Arkansas
Opinion delivered March 25, 1996

*Bart E. Ziegenhorn*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant Deangelo Allen, Earnest Phillips, Jr., and Quincy Wright were charged with the capital murder of Otto Jeter. Appellant was tried separately, convicted of capital murder, and sentenced to life imprisonment without parole. We affirm the judgment of conviction.

Because appellant contends that the evidence is insufficient to sustain the conviction, we set out the evidence with all inferences favorable to appellee. *See Missildine* v. *State*, 314 Ark. 500, 863 S.W.2d 813 (1993). Tony McKenzie, a friend of appellant, testified that on the afternoon of the murder, Phillips, Wright, and appellant came to his house. Sometime after dark, the four of them got into Phillips's car. McKenzie drove appellant, Phillips, and Wright to the intersection of Seventh and Broadway Streets in West Memphis where Phillips asked McKenzie to let them out so he could "sting a fool," or rob someone. McKenzie testified that he told Phillips he wanted no part of a robbery. He stated that when Phillips made the statement, Phillips was in the passenger side of the front seat and appellant and Wright were in the back seat. After letting the three of them out, McKenzie drove to his girlfriend's house. He stayed there until 11:35 p.m., got back into Phillips's car, and started back to his house. On the way back he saw appellant, Phillips, and Wright at a four-way intersection. McKenzie said that, as he stopped to let them in the car, he saw that Phillips's shirt was ripped and that he was throwing something away. In addition, it looked like Phillips had plastic wrapped around his hand. When they got into the car, Wright had his hands tucked up under his shirt and

appellant was sweating. McKenzie drove to his home, and Phillips drove the car away with Wright and appellant as passengers.

McKenzie additionally testified that Phillips later told him that he had killed a man and that he "couldn't take it," but gave no other details of the murder. Phillips had a pistol in his possession when he made the statement.

Eric Marshall, another acquaintance, testified that appellant told him that the three defendants heard that Jeter had won some money gambling. Appellant told him they went to Jeter's house, told Jeter that they had car trouble, and Jeter opened the door and let them in. He said Phillips took a potholder from the wall and used it to cover a pistol. Phillips pulled the trigger, the pistol snapped, and Jeter asked them if they were playing trick or treat. Marshall said that appellant told him that Phillips pulled the trigger a second time, the pistol fired, they searched the house and took some guns, and McKenzie picked them up. Marshall testified that appellant was shaky and had tears in his eyes when he talked about the crime.

Appellant made an incriminating statement that was video-taped and shown to the jury. This statement contained details that were inconsistent with other witnesses' testimony. Appellant stated that he, McKenzie, Phillips, and Wright got into Phillips's car. McKenzie was driving. He said the car blew out a tire just before they reached Ninth Street. Phillips told McKenzie, the driver, to stay with the car while the rest of them went for help. He said that he asked Phillips where they were going and Phillips told him that he would "see when they got there." They went to Jeter's house, and Jeter let them in because he knew Phillips. Appellant said that he went to the bathroom when they first entered the house, and while still in the bathroom, he heard a gunshot. He came out of the bathroom and saw Jeter was bleeding. He said Phillips told him to search Jeter, but he declined.

Appellant said that he saw Phillips and Wright search the house and watched them find a Crown Royal sack filled with fifty-cent pieces. He said they offered him some of the money, but he declined to take it. He said Phillips and Wright found three or four twenty-two caliber revolvers in another room. One of the pistols was found under a bed. In a third room, they found more money. He said that he had been unaware of the plan to rob Jeter before

they went into the house.

Quincy Wright also gave an incriminating statement which was videotaped and shown to the jury. In it, Wright said appellant was sitting on the couch immediately before the shooting.

Jeter's corpse was found lying face down in the living room by Beulah Weatherspoon, a neighbor. Ms. Weatherspoon's son, Rodney Weatherspoon, checked Jeter's pulse but found none, and saw that there was dried blood on his head, his back, and the back of his pants. He testified that the house had been ransacked, as though someone had been looking for something. Drawers had been opened and were on the floor, clothing was strewn all over the floor, mattresses had been thrown off the bed, and closet doors were open.

West Memphis police detective Bryn Ridge testified that when he arrived at the scene, he noticed that there did not appear to have been a forced entry. The key was in the lock on the inside of the security door. The television was on. He said that he found Jeter lying in the floor, apparently shot in the head. He said the entire house was ransacked except for the kitchen. The medical examiner's report showed that Jeter died from a gunshot wound to the head.

Jeter's widow testified that when she returned home, the money Jeter had won gambling was missing. His empty billfold was found away from his body. She testified that forty dollars' worth of half dollars contained in a Crown Royal bag and some pistols were missing.

The State sought to prove that appellant aided in the robbery and is liable for capital murder because the person for whom he was an accomplice, Phillips, killed Jeter in the course of the felony. The relevant statute provides that one commits capital murder if:

> (1) Acting alone or with one (1) or more other persons, he commits or attempts to commit . . . robbery . . . and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life[.]

Ark. Code Ann. § 5-10-101(a)(1) (Repl. 1993 & Supp. 1995).

To prove that appellant was an accomplice to capital murder, the State had to prove that "with the purpose of promoting or facilitating the commission of an offense," appellant "solicit[ed], advise[ed], encourage[ed], or coerce[d]" another person to commit capital murder or "aid[ed], agree[d] to aid, or attempt[ed] to aid the other person in planning or committing" capital murder, or "having a legal duty to prevent the commission of" capital murder, "fail[ed] to make proper effort to do so." Ark. Code Ann. § 5-2-403(a).

■■ There was substantial evidence from which the jury could have found a motive from the testimony that the three codefendants knew Jeter had won money gambling, and could have concluded that appellant aided or attempted to aid in the commission of the robbery from the proof of his actions in getting in the car, voluntarily getting out near Jeter's house, walking up to Jeter's house, and then going inside. There was substantial evidence from his statements to others that he was more than an innocent bystander and that he knew, in detail, the items taken. The jury was not required to believe appellant's version of the event because credibility of witnesses is the exclusive province of the trier of fact. *Bryant v. State*, 314 Ark. 130, 862 S.W.2d 215 (1993).

■■ Appellant next argues that the trial court erred by allowing Phillips to assert his Fifth Amendment right against self-incrimination. We do not reach the issue. Appellant made no objection in the trial court to Phillips's assertion of the Fifth Amendment, and we do not address arguments made for the first time on appeal. *Stewart v. State*, 320 Ark. 75, 894 S.W.2d 930 (1995). Even in cases where life without parole is imposed, this court's duty is only to examine the record for error in objections made at trial and decided adversely to an appellant. Ark. Sup. Ct. R. 4-3(h); *Spears v. State*, 321 Ark. 504, 905 S.W.2d 828 (1995). In addition, appellant made no proffer of Phillips's testimony, and we have no way of knowing "the nature of the statement and the exposure it invites," which is the prerequisite for determining whether a Fifth Amendment privilege exists. *See In re Gault*, 387 U.S. 1, 49 (1967). Further, in *Orr v. State*, 288 Ark. 118, 703 S.W.2d 438 (1986), we said " 'where error is assigned in the refusal of the court to hear the testimony of a witness, the record must disclose the substance or purport of the offered testimony, so that

this court may determine whether or not its rejection was prejudicial.' " *Id.* at 125, 703 S.W.2d at 441 (quoting *Latourette* v. *State*, 91 Ark. 65, 67, 120 S.W. 411, 411 (1909)).

An examination of the record has been made in accordance with Ark. Sup. Ct. R. 4-3(f), and we have determined that there were no rulings adverse to appellant that constituted prejudicial error.

Affirmed.