David B. BROWN *v.* STATE of Arkansas

CA CR 95-948                                    932 S.W.2d 777

Court of Appeals of Arkansas
Division III
Opinion delivered October 30, 1996
[Petition for rehearing denied December 4, 1996.]

*Sloan, Rubens & Peeples,* by: *Kent J. Rubens* and *J. Michael Stephenson,* for appellant.

*Winston Bryant,* Att'y Gen., by: *J. Brent Standridge,* Asst. Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant David B. Brown was charged with possession of a controlled substance (methamphetamine) with intent to deliver, simultaneous possession of drugs and firearms, felon in possession of a firearm, and possession of paraphernalia with intent to use. These charges resulted from a search warrant that was executed at appellant's residence on March 13, 1994. Appellant entered a conditional plea of guilty, pursuant to Ark. R. Crim. P. Rule 24.3(b), to the charges of possession with

intent to deliver, simultaneous possession with intent to deliver, simultaneous possession of drugs and firearms, and possession of paraphernalia with intent to use, and was sentenced according to his plea. Appellant argues on appeal that the trial court erred in failing to grant his motion to suppress, contending that the search pursuant to the warrant was unlawful because the officers executed the warrant at a time other than that specified in the warrant and that the warrant failed to specify with particularity the place to be searched. We agree with the ruling of the trial court and affirm.

At the suppression hearing, several officers testified to their involvement in the case prior to obtaining the search warrant, in obtaining the search warrant, and in executing the search warrant. Testimony indicated that on March 12, 1994, Darrell Wilson was arrested in Marette with approximately one pound of methamphetamine. Mr. Wilson informed the officers that he had been "fronted" the methamphetamine by the appellant on March 12, 1994, and that he had purchased approximately five to six pounds of methamphetamine in almost daily transactions over the preceding two months. Mr. Wilson informed the officers that the appellant stated he had plenty of methamphetamine and "could go for awhile."

Based on the information provided by Mr. Wilson, in the early morning hours of March 13, 1994, Investigators Jerry Brawley and Mike Marshal took Mr. Wilson to the town of Gosnell in order for Mr. Wilson to identify the appellant's residence for the officers. After viewing the residence and writing down a description, Investigators Brawley and Marshall met other officers at the Blytheville Police Department and turned in the description of the house to Rusty Grigsby, a sergeant with the Jonesboro Police Department.

Sergeant Grigsby testified that he typed out an affidavit for a search warrant on a computer-generated form at the Blytheville Police Department. A search warrant was also prepared on a computer-generated form. The affidavit and search warrant were taken by Sergeant Grigsby, Investigator Brawley, and informant Wilson to the home of Judge David Burnett who authorized a search by signing the search warrant at 7:34 a.m. on March 13, 1994.

Sergeant Grigsby, Investigator Brawley, and other officers met back in Blytheville and proceeded to Gosnell to execute the search warrant at appellant's residence. Investigator Brawley testified that

he led the search party to the appellant's residence because he was the person who only hours before had been to the appellant's residence to obtain its description. Testimony indicated that the officers arrived at appellant's residence at approximately 8:55 a.m. on March 13, 1994, and searched his home pursuant to the warrant. Several thousand dollars of cash were recovered from appellant's home, along with more than a pound of methamphetamine, several firearms, and several different types of paraphernalia (scales, syringes, rolling papers, plastic baggies, etc.).

Appellant filed a motion to suppress in which he pointed out discrepancies in the search warrant. The trial court denied the motion, and appellant contends on appeal that the trial court erred in doing so. He contends that the search warrant was invalid because it stated that the home to be searched was in Blytheville, Arkansas, rather than Gosnell, alleging the description was invalid. Appellant also contends that the search was invalid because it was executed at 8:55 a.m., when the warrant stated the search was to be executed between the hours of 6 a.m. to 8 a.m.

■■ In reviewing a trial court's ruling on a motion to suppress, this court makes an independent determination based on the totality of the circumstances and reverses the trial court's ruling only if it is clearly against the preponderance of the evidence. *Houston* v. *State*, 41 Ark. App. 67 S.W.2d (1993). Because the preponderance of the evidence turns heavily on the question of credibility, we defer to the superior position of the trial court in making the determination of which evidence to believe. *Dickerson* v. *State*, 51 Ark. App. 64, 909 S.W.2d 653 (1995).

In this case, Sergeant Grigsby testified that he filled out the affidavit and search warrant in question. He testified that forms were computer-generated at the Blytheville Police Department and that he filled in the description of appellant's residence and where it was located. The following are the portions of the search warrant in question which appellant alleges were so deficient as to invalidate the search warrant. The underlined portions are the blanks filled in by Grigsby on the computer at the Blytheville Police Department:

> The State of Arkansas to any law enforcement officer of the State, I Judge <u>DAVID BURNETT</u> on this <u>13TH</u> day of <u>March</u>, <u>1993</u> at <u>2990 RIVERLAWN</u> hereby find that there is reasonable cause to search <u>THE RESIDENCE OF DAVE</u>

BROWN, LOCATED ON THE NORTHWEST COR-
NER OF WEST GOSNELL AND SOUTH GOSNELL
STREETS, A RED BRICK HOUSE, WITH AN ADDI-
TION ON THE EAST OF THE HOUSE. THE HOUSE
IS FACING SOUTH. THE HOUSE HAS A CHAIN
LINK FENCE. THE HOUSE ALSO HAS AN OVAL
SHAPED WINDOW ON THE FRONT DOOR. Located
in or near Blytheville, County of Mississippi and State of
Arkansas, and that my finding of reasonable cause is based on
the following: AN AFFIDAVIT MADE BEFORE ME BY
*INV. TERRY BRAWLEY & RUSTY GRIGSBY.*

\* \* \*

This warrant shall be executed between the hours of 6 a.m.
and 8 a.m.

Sergeant Grigsby testified that he was unaware that the warrant
stated the search was to be conducted "in or near Blytheville," and
was also unaware that the warrant stated that the warrant was to be
"executed between the hours of 6 a.m. and 8 a.m." He testified that
both of the errors were computer-generated on the forms that he
used and that this was the first time he had typed a warrant using
the Blytheville Police Department's computer. Grigsby testified that
he was aware that the Arkansas Rules of Criminal Procedure states
that warrants are to be executed between 6:00 a.m. and 8:00 p.m.
unless a nighttime search is authorized. He testified that he believed
that he had the authority to search the house pursuant to the
warrant.

Investigator Jerry Brawley testified that he obtained the
description of the appellant's residence for the search warrant and
affidavit by traveling to the residence with informant Wilson. He
also testified that he led the officers to the residence to search the
home. Testimony indicated that he was unaware of the problems
with the warrant but was aware that the rules of criminal procedure
allow for a search between 6:00 a.m. to 8:00 p.m.

The general rule in regard to search warrants is found in
Ark. R. Crim. P. Rule 13.2, which provides in part:

(b) The warrant shall state, or describe with
particularity:
(i) the identity of the issuing judicial officer and the date

and place where application for the warrant was made;

(ii) the judicial officer's finding of reasonable cause for issuance of the warrant;

(iii) the identity of the person to be searched, and the location and designation of the places to be searched;

(iv) the persons or things constituting the object of the search and authorized to be seized; and

(v) the period of time, not to exceed five (5) days after execution of the warrant, within which the warrant is to be returned to the issuing judicial officer.

(c) Except as hereafter provided, the *search warrant shall provide that it be executed between the hours of six a.m. and eight p.m., and within a reasonable time, not to exceed sixty (60) days.*

(Emphasis supplied.)

■■ Arkansas Rule of Criminal Procedure Rule 16.2(e) provides that a motion to suppress shall be granted only if the court finds that a violation is substantial or it is otherwise required by the United States or Arkansas Constitutions. Highly technical attacks on search warrants are not favored. *Watson* v. *State*, 291 Ark. 358 724 S.W.2d 478 (1987). All warrants are to describe with particularity the location and designation of the place to be searched in order to avoid the risk of the wrong property being searched or seized. *Id.; Jones* v. *State*, 45 Ark. App. 28 S.W.2d (1994). The test for determining the sufficiency of the description is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched. *Pike* v. *State*, 30 Ark. App. 107, 110, 783 S.W.2d 70, 72 (1990) (quoting *Lyons v Robinson*, 783 F.2d 737 (8th Cir. 1985)).

Appellant specifically contends that the warrant was invalid because it stated the home to be searched was in Blytheville. However, a clear reading of the warrant states that the residence to be searched was "located in *or near Blytheville*, County of Mississippi and State of Arkansas." Lieutenant James Sanders of the Blytheville Police Department testified that Gosnell is only two miles from Blytheville. He further testified that there is no West Gosnell or South Gosnell Street in Blytheville, as described in the affidavit and search warrant.

■ Testimony also indicated that, just prior to obtaining the warrant, Investigator Brawley went to the residence and obtained a location description for the warrant. Brawley was also the officer who led the search party to the appellant's residence. This court and the supreme court have held that where the officer who provides the description of the place to be searched in the warrant also executes the warrant a mistaken search is unlikely. *Costner* v. *State*, 318 Ark. 806, 887 S.W.2d 553 (1994); *Jones* v. *State, supra; Pike* v. *State, supra.*

■ Based on the testimony and exhibits presented to the trial court, we find that the description in this case was sufficient. Appellant only challenges the part of the description that states that the home is in Blytheville. However, the warrant clearly states "in *or near Blytheville*," and the testimony showed that Gosnell is only two miles from Blytheville. Also, because the officer who gave the description of the place to be searched is the same officer who led the other officers to the appellant's residence, the risk of misidentification was minimal. This point has no merit.

■ Appellant also specifically contends that the evidence should have been suppressed because the search occurred at 8:55 a.m. when the warrant stated the search shall be executed between 6:00 a.m. and 8:00 a.m. The trial court found that the 8:00 *a.m.* was a typographical error and an innocent mistake. We agree. Arkansas Rule of Criminal Procedure 13.2(c) provides that warrants shall be "executed between the hours of six a.m. and eight p.m." The officers testified that this was a computer-generated form that must have already contained the 8 *a.m.* mistake and that they did not notice the error. We find that this typographical error was not a fatal defect. This technical error was not a substantial violation requiring suppression of the evidence. *See* Ark. R. Crim. P. 16(c); *Jones* v. *State, supra.*

Under these circumstances, we hold that the alleged defects were not fatal to the warrant. We cannot say that the trial court's ruling was clearly against the preponderance of the evidence.

JENNINGS, C.J., and ROGERS, J., agree.