Randolph George HICKS *v.* STATE of Arkansas

CR 96-482 941 S.W.2d 387

Supreme Court of Arkansas
Opinion delivered March 18, 1997

[Petition for rehearing denied April 14, 1997.]

*Chandler Law Firm*, by: *Edward Witt Chandler*, and *Wayne Emmons*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

RAY THORNTON, Justice. Appellant Randolph G. Hicks was convicted of one count of delivery of a controlled substance to Mark Lamm, a second count of delivery of a controlled substance to Rodney Silvers, one count of possession of a controlled substance with intent to deliver, and one count of possession of drug paraphernalia. He was sentenced to five years and fined $10,000 on the paraphernalia charge and sentenced to a term of thirty years on each of the other charges. The court ordered that the sentences run consecutively for a total of ninety-five years. Appellant appeals each of the convictions, asserting eleven grounds for reversal. We find one of those grounds to have merit with respect to his conviction for possession of drug paraphernalia; consequently, we reverse and remand that conviction. We find no error with respect to the other charges, and we affirm those convictions.

### Sufficiency of the Evidence

We first address the sufficiency of the evidence to sustain the convictions. Our review of this question is required before we consider other claims of error. *Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994).

On May 10, 1995, Lieutenant Lyle Scott, an officer in the Criminal Investigation Division of the Mountain Home Police Department was called to investigate circumstances where a small child was locked out of an apartment where her mother and Mark Lamm lived. Officer Scott testified that upon returning the child to the apartment, police officers found controlled substances in the kitchen and in the master bedroom. Officer Scott testified that Mark Lamm admitted possession of the methamphetamine, and

stated that he had obtained it from appellant on that same day and that Rodney Silvers had also obtained drugs from appellant that day.

At trial, Lamm testified that he had given appellant $2,200.00 a week earlier for appellant's use in going to California and purchasing two ounces of methamphetamine for return to Arkansas and delivery to him. He testified that when he went to appellant's mobile home on May 10 to pick up the drugs, he saw Silvers leaving the mobile home with a coat draped over his arm. Lamm testified that appellant told him that Silvers had gotten four ounces of methamphetamine from him. Lamm stated that he watched appellant weigh the drugs on a triple-beam scale and that when he left Hicks's mobile home, appellant still had a quantity of methamphetamine in his possession.

Based upon a substantially similar account to Officer Scott on the evening of May 10, a search warrant was obtained for both appellant's and Silvers's residences, and legal searches were made on May 11. Officer Scott testified that a search of appellant's home revealed four eight-balls of suspected methamphetamine in the kitchen, nine suspected Valium tablets in appellant's pants pockets, approximately one-fourth gram of suspected methamphetamine on a glass pane, residue on razor blades and on a straw, as well as a spoon with residue, a wooden pipe, and a straw in a bedroom that was then occupied by Debra Schatz. Officer Scott also testified that a jar containing Valium tablets and some papers were found in the bedroom of Charles Lee, who also resided in the appellant's mobile home. Additional exhibits introduced at trial included airline tickets to and from California, credit card receipts for a hotel room in Lawndale, California, and a Western Union receipt, which were all found in the master bedroom then occupied by Ms. Schatz.

Ms. Schatz testified that she picked up Hicks at a residence in California and saw drugs divided, a portion of which appellant put in a leather zip-up bag that he took with him. She testified that she knew he was doing a drug transaction because he had done it before and that Hicks carried the same leather bag on the return trip to Mountain Home.

In addition to the approximately two ounces of methamphetamine picked up at Lamm's apartment on the night of May 10, additional controlled substances were found when the search of Rodney Silvers's residence was conducted on May 11. Mrs. Silvers testified that she had found methamphetamine under the vanity in the master bathroom of the Silverses' home, and tried to flush it down the toilet as the police began the search of her home. She further testified that on the previous day she heard a telephone message from appellant informing her husband that he was back, and she testified that her husband went to see appellant that evening. Appellant admitted that Silvers came by his house but insisted that it was later than the 5:30 time suggested by Lamm. Officer Tommy Steen testified that he conducted the search of the Silverses' home and found about 5.6 grams of methamphetamine and two ounces of marijuana as well as a triple-beam scale, a straw, and a razor blade.

In determining whether sufficient evidence was presented to sustain appellant's convictions on the count of delivering a controlled substance to Silvers; on the count of delivering a controlled substance to Lamm; and on the count of possession of a controlled substance with intent to deliver, as well as the count of possession of drug paraphernalia, we view the evidence in the light most favorable to the State and affirm where there is substantial evidence to support the verdict. *Bennett v. State*, 307 Ark. 400, 821 S.W.2d 13 (1991). This review necessarily includes evidence both properly and improperly admitted. *Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (1984). If evidence is of enough force to compel a conclusion one way or the other, and goes beyond suspicion or conjecture, it is considered substantial. *Bennett v. State*, 307 Ark. at 402, 821 S.W.2d at 14. Our standard of review requires us to consider only the testimony that supports the verdict of guilt. *Id.* (citing *Gardner v. State*, 296 Ark. 41, 754 S.W.2d 518 (1988)).

We find there is an abundance of substantial evidence to support this jury verdict. The job of the jury is to judge the credibility of witnesses and they may chose to believe, as they did here, the State's case. *Jones v. State*, 297 Ark. 499, 763 S.W.2d 655 (1989). "It is the jury's province to judge the credibility of

witnesses, and we will not disturb their judgment." *Lewis v. State,* 295 Ark. 499, 749 S.W.2d 672 (1988).

### Drug Paraphernalia Charge

Although the evidence, including evidence erroneously admitted, *Harris, supra,* is sufficient to support the conviction for possession of drug paraphernalia, the trial court committed error by allowing into evidence certain items designated as drug paraphernalia that were not shown to be in appellant's possession. Appellant's seventh assignment of error that is the trial court abused its discretion in admitting a triple-beam scale, which was seized from the Silverses' residence, and a jar of Valium tablets found in Charles Lee's bedroom. Appellant contends that this evidence was irrelevant and that its probative value was substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 401, 402, and 403.

His point is well taken. We have not been referred to any authority that a jar of Valium tablets should be considered as drug paraphernalia, and our review of Ark. Code Ann. § 5-64-101 does not include this as an item to be considered as such. Triple-beam scales, on the other hand, are included within the definition of "drug paraphernalia" in Ark. Code Ann. § 5-64-101(v)(5) as follows: "Scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances." *See Brown v. State,* 55 Ark. App. 107, 929 S.W.2d 146 (1996).

Although scales are paraphernalia, no connection was established between appellant and the triple-beam balance scale confiscated from the Silverses' home. Similarly, no connection was established with the Valium tablets seized from Charles Lee's bedroom. When a residence is shared and joint control is established, proof of knowledge of the contraband is required under our cases. *Pyle v. State,* 314 Ark. 180, 862 S.W.2d 165 (1993). No such knowledge was established in this case. Appellant's argument has merit because any connection linking him to these items was tenuous at best, and would not support a conviction for constructive possession of these items. The scale was seized from the Silverses' residence, and there is no evidence by which a jury

could infer that appellant had control, exclusive access, or dominion over this place. *Ravellette v. State*, 264 Ark. 344, 571 S.W.2d 433 (1978). Therefore, any conclusion connecting appellant to the scales could only be reached by speculation and conjecture and their admission into evidence was prejudicial to the charge of possession of drug paraphernalia.

■ We have concluded that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice to the jury's consideration of the charge of possession of drug paraphernalia, and the trial court abused its discretion in allowing the admission of the evidence over appellant's timely objection. *Bliss v. State*, 282 Ark. 315, 668 S.W.2d 936 (1984). We reverse the conviction on the charge of possession of drug paraphernalia and remand for a new trial or other disposition of that charge.

### Harmless Error

■ While the erroneous admission of drug paraphernalia requires reversal of the conviction on the charge of possession of drug paraphernalia, evidence of drug paraphernalia is not essential to convictions on charges of possession or delivery of a drug. The admission of the scale and the Valium tablets as "paraphernalia" was harmless error with respect to the other charges. There was an abundance of evidence to support convictions for delivery of controlled substances and for possession of controlled substances with intent to deliver. The erroneous admission of additional drug paraphernalia was not prejudicial to the determination of guilt on those charges. We have held that when evidence of guilt is overwhelming and the error is slight, we can declare that the error is harmless and affirm. *Abernathy v. State*, 325 Ark. 61, 925 S.W.2d 380 (1996).

### Other Arguments

■ None of appellant's other points of appeal has merit. Appellant's second, fifth, and eleventh points of appeal are not preserved for our review; thus we do not reach the merits of these arguments. For his second point, appellant asserts the trial court abused its discretion by ordering the sentences be served concur-

rently when he was a first offender, he had been legitimately employed, and he was otherwise a solid citizen. He claims the consecutive sentences were entered erroneously, and that the trial judge should have rejected the jury's recommendation of consecutive sentences. However, we cannot reach this question because nothing in the abstract shows that objection was made to the sentences during the proceedings, and no ruling was abstracted. We have repeatedly held that we will not address on appeal issues that have not been preserved at trial. *Jones v. State*, 327 Ark. 85, 937 S.W.2d 633 (1997).

In his fifth allegation of error, appellant alleges that the police used false information in an affidavit in order to secure a search warrant for his premises in violation of *Franks v. Delaware*, 462 U.S. 213 (1983). However, appellant failed to raise this issue to the trial court at any point during these proceedings, and thus he is procedurally barred from now raising it on appeal. *Jones*, 327 Ark. at 87, 937 S.W.2d at 634.

He also states that his counsel violated his Sixth Amendment right to effective assistance of counsel by neglecting to file a pretrial motion to suppress. This argument is barred from our review as well, because he did not raise this allegation in a motion for new trial. We will not consider an for ineffective assistance of counsel argument on direct appeal unless the issue was raised in a motion for new trial. *Tapp v. State*, 324 Ark. 76, 920 S.W.2d 483 (1996); *Abdullah v. State*, 301 Ark. 235, 783 S.W.2d 58 (1990).

For his eleventh point of appeal, appellant argues that it was a denial of due process for the State to adopt a theory of the case not supported by the evidence. He provides no supporting argument, case law, or references to either the trial record or his abstract. A review of his abstract shows this argument is not abstracted for this court's consideration, and it does not appear from the record he addressed the issue at trial court level. It is incumbent upon an appellant to produce a record sufficient to demonstrate error. *Mayo v. State*, 322 Ark. 328, 920 S.W.2d 843 (1996). The record on appeal is confined to that which is abstracted. *Grinning v. City of Pine Bluff*, 322 Ark. 43, 907 S.W.2d

690 (1995). Furthermore, we do not address arguments that are not supported by authority or convincing argument. *Dixon v. State*, 260 Ark. 857, 862, 545 S.W.2d 606 (1977).

Appellant's third and fourth allegations of error are basically the same claim. He asserts that the prosecutor committed misconduct by knowingly using perjured testimony of witness Mark Lamm and that use of such testimony deprived him of due process of law. Specifically, he argues that Lamm, the "informant," lied in his affidavit when he stated under oath Rodney Silvers was in Baxter County at appellant's residence when "obviously" he was at work in Marion County. Appellant claims that Lamm lied under oath for the police officers to obtain a search warrant.

Appellant has failed to demonstrate that Lamm's substantive testimony was false or that there was of misconduct on the part of the prosecutor. The jury heard the testimony of several persons who said Silvers was at work until approximately 6:30 or 7:30 and that Silvers went to appellant's home sometime after 5:30. Mr. Lamm stated he thought he saw Mr. Silvers at appellant's home between 3:30 and 5:30. It is an issue for the jury's resolution whether Rodney Silvers was participating in a drug transaction in Baxter County or was at work in Marion County, or whether he went to work and then participated in a drug transaction. Regardless, the issue of credibility is within the sole province of the jury. *Allen v. State*, 324 Ark. 1, 918 S.W.2d 699 (1996).

Appellant next claims that the trial court should have set aside his convictions after the trial because of "overwhelming" new evidence. The abstract contains an "Amendment to Motion for New Trial," which attaches three affidavits all stating verbatim that Rodney Silvers was at work from 2:30 to 6:30. One of these is from Allen Algee who testified to this issue at trial. These affidavits are not "newly-discovered" evidence, but merely impeach the testimony of Mark Lamm who stated that he thought he saw Silvers at appellant's home between 3:30 and 5:30. Both Algee and Scott Garrison testified that Silvers left work between 6:30 and 7:30.

 ██ We have previously stated that appellant failed to prove that there was any perjury or any knowing use of such testimony by the State. Therefore, the issue becomes one of credibility, and we cannot say that the trial court abused its discretion in refusing to consider this "newly discovered" evidence as requiring a new trial. We do not reverse the trial judge's refusal to grant a new trial absent an abuse of discretion. *Bennett v. State*, 307 Ark. at 404, 821 S.W.2d at 15. We have long held that newly discovered evidence is one of the least favored grounds to justify a new trial. *Id.* (citing *Williams v. State*, 252 Ark. 1289, 482 S.W.2d 810 (1972)). Moreover, we do not grant a new trial based on perjury on immaterial or collateral issues if the false testimony can be "eliminated without depriving the verdict of sufficient evidentiary support." *Bennett*, 307 Ark. at 404, 821 S.W.2d at 15 (citing *Little v. State*, 161 Ark. 245, 255 S.W. 892 (1923)). If newly discovered evidence tends only to impeach other testimony presented at trial, it is not necessarily grounds for a new trial. *Williams v. State*, 252 Ark. at 1292, 482 S.W.2d at 812. Therefore, absent a showing that there was any perjured testimony at all, or that the "new" evidence would serve any purpose other than to impeach other testimony, we cannot say that the trial court abused its discretion.

For his eighth point of appeal, appellant complains that the trial court erred in allowing hearsay statements of Officer Scott to the effect that Charles Lee was not identified by witnesses as being the person who went to California. He claims that the admission of this evidence is hearsay evidence and violated his Sixth Amendment right to confrontation.

 The officer's statement that during his investigation no one identified Charles Lee as having traveled to California was not presented as proof whether Mr. Lee had gone to California or not, but only that the witnesses did not identify him as making the trip. This court has said that such statements are admissible "not to show the truth of [such] statements, but to show that they were made. . . ." *Hill v. State*, 314 Ark. 275, 862 S.W.2d 275 (1993). Citing *Weinstein's Evidence*, the *Hill* court went on to say that statements are not hearsay when "the words are offered, not for their truth, but merely to show the fact of an assertion." *Id.*; *see also* 4 John Weinstein & Margaret Berger, *Weinstein's Evidence*

§ 801(c)(01), at 801-93 (quoting Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae*, 31 Yale L.J. 229, 233 (1922)), and *United States v. Cantu*, 876 F.2d 1134, 1137 (1977). Based on the court's analysis in *Hill*, we conclude that Officer Scott's testimony was not hearsay.

In his brief, appellant asserts that "other witnesses" were never called to testify by the State. Appellant's abstract contains only the testimony of the following State witnesses: Officer Scott, Mark Lamm, Debbie Schatz, Robin Silvers, and Officer Steen. His brief does not make clear and it cannot be garnered from the abstract whether appellant is referring to "other witnesses" not a part of the proceeding or "other witnesses" who would later testify. We must therefore conclude that he means those who would later testify.

At trial, Mark Lamm had stated he had never bought from the roommate and was not sure that he was involved with drugs. Ms. Schatz stated she had previously met the roommate one time in California, but he was in Arkansas during this trip while appellant was in California. Appellant's attorney conducted an extensive cross-examination of both of these witnesses; therefore, he was afforded his opportunity to confront them.

For his ninth point on appeal, appellant claims that the trial court erred in allowing a police officer to testify on redirect examination as to the variations in drug purity levels within a certain quantity of methamphetamine, when the officer was not an expert in this field. *Moore v. State*, 323 Ark. 529, 915 S.W.2d 284 (1996). Prior to this testimony, on cross-examination, appellant's attorney had already asked Officer Scott about the drug purity and stated, "I'll open the door, give us your opinion." Officer Scott responded. A short time later, when inquiring about a difference between drug amounts recovered at Mr. Hicks's home and the amount bought in California, appellant's attorney said, "I'll open the door again, can you explain that difference?" First, appellant cannot complain of error when he is the one who originally elicited the testimony. *Porter v. State*, 308 Ark. 137, 823 S.W.2d 846 (1992). Second, we do not find that the trial court abused its discretion in allowing the officer to testify to what, in his experience,

were very common-sense explanations for a batch of methamphetamine not being mixed thoroughly. *Moore v. State*, 323 Ark. at 549, 915 S.W.2d at 295.

■ For his tenth point of appeal, appellant asks that we reverse his sentence because it was the result of passion, prejudice, and caprice, "if not actual misconduct," and because it violates his Eighth Amendment guarantee that punishment be proportional. Appellant received sentences for the convictions that were within the statutory range. We do not review the severity of a sentence which is within the statutory range except in very narrow exceptions, none of which apply in this case. *Henderson v. State*, 322 Ark. 402, 910 S.W.2d 656 (1995). We affirm on this point.

In summary, we affirm on all points the convictions for two counts of delivery of a controlled substance and one count of possession of a controlled substance with intent to deliver, and we affirm the sentences of thirty years for each of the three convictions to be served consecutively. However, we reverse the conviction for possession of drug paraphernalia and remand that conviction for further proceedings.

GLAZE and BROWN, JJ., concur in part and dissent in part.

NEWBERN, CORBIN, and IMBER, JJ., dissenting in part and concurring in part.

ROBERT L. BROWN, Justice, concurring in part and dissenting in part. While I concur in the majority opinion in so far as it affirms Hicks's convictions relative to the possession and delivery charges, I must respectfully dissent from that portion of the opinion that reverses his conviction for possession of drug paraphernalia due to the admission of the jar of Valium tablets and the triplebeam scales. The admission of such evidence, although erroneous, was not prejudicial error.

## I. Methamphetamine Sale to Rodney Silvers

Clearly, the majority is correct in affirming the three methamphetamine-related convictions due to the overwhelming evidence of guilt. For example, as to the transaction with Rodney Silvers, Mark Lamm testified that Hicks admitted he sold Silvers

four ounces of methamphetamine on May 10, 1995, and Lamm stated under oath that he saw Silvers leaving Hicks's mobile home that afternoon with a coat draped over his arm. This evidence was corroborated by a subsequent search of Silvers's residence, which uncovered a significant amount of methamphetamine that Robin Silvers testified was not present until after her husband's return from Hicks's mobile home.

## II. Methamphetamine Sale to Mark Lamm and Possession of Methamphetamine with Intent to Deliver

As to the second transaction, Lamm's testimony that he purchased methamphetamine from Hicks suffices as substantial evidence, and when corroborated with the methamphetamine found in Hicks's bedroom and the testimony of Ms. Debra Schatz that Hicks carried the product from California in the leather zip-up bag, the evidence is convincing that he possessed methamphetamine with intent to deliver. In sum, the majority correctly disposes of Hicks's argument with respect to these convictions.

## III. Drug Paraphernalia

The State's information charged Hicks with possession of a water pipe, or "bong," containing suspected marijuana residue. Officer Lyle Scott of the Mountain Home Police Department testified that the bong was found in the living room of Hicks's mobile home. Two hemostats containing suspected marijuana residue and a marijuana joint were found in close proximity to the water pipe. Because the mobile home was the joint residence of Hicks and Charles Lee, the State had the burden of proving that Hicks knew the water pipe was contraband and that he exercised care, control, and management over it. *Darrough v. State*, 322 Ark. 251, 908 S.W.2d 325 (1995). This burden was met. Ms. Schatz testified that she went to sleep in Hicks's bedroom on May 10, 1995, as early as 8:30 or 9:00 p.m. and that Charles Lee had left the mobile home as early as 4:00 p.m. that afternoon. From Hicks's own testimony, he was awake and entertaining Rodney Silvers as late as 2:00 a.m. on May 11, 1995. This was only hours before the police search of the mobile home. Given the location

of the water pipe at the time it was discovered and the fact that Hicks was the last person awake and in the living room, as opposed to Lee or Ms. Schatz, at the time of the search, there was clear evidence that Hicks, as opposed to any other occupant, had possession of the water pipe.

## IV. Valium Tablets and Scales

This court has made it clear that a conviction may be affirmed if the evidence of guilt is overwhelming and the error complained of is slight. *See, e.g., Abernathy v. State*, 325 Ark. 61, 925 S.W.2d 380 (1996); *Rockett v. State*, 318 Ark. 831, 890 S.W.2d 235 (1994); *Greene v. State*, 317 Ark. 350, 878 S.W.2d 384 (1994). On these facts, the error regarding the Valium tablets was slight given the fact that the jury was explicitly apprised of the fact that the Valium tablets were taken from Lee's bedroom in the jointly-occupied mobile home. Furthermore, Valium tablets were found on Hicks's person.

As to the triple-beam scales, it was made clear to the court and to the jury that they were taken from Silvers's residence. The court's ruling, however, is not without some support, as evidence of scales used for weighing methamphetamine found at the home of Hicks's purchaser the day after the sale of a significant amount of methamphetamine is certainly probative of the occurrence of the sale itself. Furthermore, the question of the prejudice suffered by Hicks must be answered. Officer Tommy Steen of the Baxter County Sheriff's Department testified on cross-examination that he could connect the scales to Silvers's residence, but not directly to Hicks. Also, Hicks puts forth the argument that the scales seized were dissimilar to those testified to by Lamm as having been at Hicks's mobile home. In sum, given all the evidence before the jury on the scales, the impact of this error was manifestly slight.

As noted earlier, however, the erroneous introduction of evidence does not, by itself, entitle a criminal defendant to a reversal of his conviction. Other jurisdictions have applied a harmless error analysis when an irrelevant drug or item of irrelevant paraphernalia was introduced in a criminal prosecution involving controlled substances. *See, e.g., United States v. Williams*, 957 F.2d

1238 (5th Cir. 1992)(admission of marijuana found on defendant's person was harmless error in prosecution for possession of cocaine with intent to distribute); *People v. Romero*, 546 N.E.2d 7 (Ill. App. 2 Dist. 1989)(testimony as to roach clips was harmless error in prosecution for possession of cocaine with intent to deliver); *People v. Hollis*, 373 N.E.2d 734 (Ill. App. 1 Dist. 1978)(admission of marijuana found at defendant's residence was harmless error in prosecution for possession of cocaine and heroin); *Rogers v. State*, 862 S.W.2d 47 (Tex. App. 14th Dist. 1993)(admission of marijuana seized from defendant's house was harmless error as to defendant's guilt on charges of possession of methamphetamine and burglary).

Because of the overwhelming evidence of guilt supporting all four convictions, I would affirm the four judgments despite the erroneous admission of both the Valium tablets taken from Lee's bedroom and the triple-beam scales taken from Silvers's residence.

GLAZE, J., joins.

ANNABELLE CLINTON IMBER, Justice, dissenting in part and concurring in part. I concur with the majority in holding that the trial court abused its discretion in allowing a set of triple-beam scales to be admitted into evidence over appellant's timely objection. No connection was established between appellant and the set of triple-beam scales confiscated from another person's home. Tommy Steen, an investigator for the Baxter County Sheriff's office, admitted that the set of triple-beam scales offered into evidence as State's Exhibit No. 24 was found in a bedroom closet at the Silvers's residence. Steen further admitted that he could not connect those triple-beam scales to the alleged transactions at the Hicks's residence. Thus, any conclusion connecting appellant with the triple-beam scales could only be reached by speculation and their admission into evidence was prejudicial error. The admission of the triple-beam scales might have been proper had Steen recovered them from Hicks's residence. *See e.g., Cox v. State*, 36 Ark. App. 173, 820 S.W.2d 471 (1991) (upholding the admission of testimony by officer who personally observed triple-beam scales in the defendant's bedroom).

The majority further concludes that the probative value of the evidence improperly admitted by the trial court was substantially outweighed by the danger of unfair prejudice to the jury's consideration of only one charge, the charge of possession of drug paraphernalia. I disagree. The danger of unfair prejudice extended to all charges, especially those involving delivery of controlled subtances and possession of a controlled substance with intent to deliver.

Although the majority accurately characterizes triple-beam scales as paraphernalia under the definition of "drug paraphernalia" in Ark. Code Ann. § 5-64-101(v)(5), the information filed against appellant does not include an allegation of possession of triple-beam scales in the drug paraphernalia charge. Rather, the drug paraphernalia charge refers only to possession of a pipe containing suspected marijuana residue and a water pipe containing suspected marijuana residue. When the State moved to admit the set of triple-beam scales into evidence, the State made no reference to its relevancy with respect to a particular charge. Rather, the State's argument in favor of relevancy is reflected in the following colloquy between counsel and the trial court:

> MR. CHANDLER: I don't understand. These are the scales from the Silvers's residence. Are you representing that these are the scales that were used in this case or are they just the scales from the Silvers's residence?
>
> MR. WEBB: All I know Mr. Chandler, is that you made reference earlier to some scales that were missing. We're simply, as a part of this investigation and coincidentally found in *close proximity*, these scales were recovered from *one of the participants*.
>
> MR. CHANDLER: These are the missing?
>
> MR. WEBB: I'd submit that they are relevant evidence.
>
> MR. CHANDLER: I'm going to object to that, Your Honor.
>
> COURT: Objection will be overruled.

(Emphasis added.)

It is highly probable that the jury considered the triple-beam scales in connection with all of the charges, particularly the charges of possession of a controlled substance *with intent to deliver* and *delivery*

of a controlled substance. The introduction into evidence of triple-beam scales would support an essential element of the State's controlled substance charges: delivery and intent to deliver. *See Ramey v. State*, 42 Ark. App. 242, 857 S.W.2d 828 (1993) (finding items, including a set of triple-beam scales and large quantities of plastic bags seized from the appellant, to be sufficient evidence of operating a drug premises).

As to the two counts of delivery of a controlled substance and and the one count of possession of a controlled substance with intent to deliver, I certainly cannot say that the jury was not adversely influenced by the erroneous admission of the set of triple-beam scales. To the contrary, the imposition of a sentence of thirty years on each count with a recommendation that the sentences be served consecutively indicates that the error did have a prejudicial effect as to all charges. *See Moser v. State*, 262 Ark. 329, 557 S.W.2d 385 (1977).

For these reasons, I concur with the majority to reverse the conviction for possession of drug paraphernaila and remand on that count; however, I dissent from the majority's affirmance of the convictions for two counts of delivery of a controlled substance and for one count of possession of a controlled substance with intent to deliver. I would reverse and remand for a new trial on those counts as well.

NEWBERN and CORBIN, JJ. join in this dissent.