RHONDA K. WOOD, Associate Justice
Quenton King appeals his capital-murder conviction. He raises three evidentiary issues on appeal. First, King contends that the circuit court erred when it denied his motion to suppress a taped recording between him and a police detective. Second, he argues that the circuit court erroneously denied his motion to suppress evidence seized from his home because the affidavit attached to the warrant did not contain sufficient grounds for the search and seizure of the evidence. Finally, he claims that the circuit court should not have permitted witnesses to testify that the victim had planned to spend the weekend with him. We affirm.
I. Background
A jury convicted King of the capital murder of his pregnant girlfriend, Megan Price, and sentenced him to life imprisonment without parole. Price's body was discovered in her home on Sunday, June 28, 2015. Several days before Price was killed she had announced in a Facebook post that she and King had been together for fourteen years and that he was the father of her child. King was married to another woman.
After Price's body was discovered, Detective Clint O'Kelley tried to contact King. King, who was attending a memorial service with David Kincade, returned the *478 detective's call on Kincade's cell phone. During the call, King admitted that he had a relationship with Price and that she could have been pregnant with his child. Unbeknownst to King or Detective O'Kelley, Kincade had installed a program on his phone that automatically recorded the telephone conversation.
After speaking to Detective O'Kelley, King confessed to Kincade that he had murdered Price. King told Kincade that he had made plans to spend the weekend with Price. Before the night of the murder he had disconnected some of his home-surveillance cameras. On the night of the murder, he left his house through the backdoor and walked across a field to the main road where an unidentified person picked him up and took him to Price's home. King used a key Price had left out for him to enter her house. Once inside, King shot and killed Price. Kincade later contacted police and reported what King had told him.
After taking Kincade's statement, Detective O'Kelley prepared an affidavit for a search warrant averring that there was reasonable cause to believe that evidence connecting King to the murder, including a surveillance system, was located in King's home. In the affidavit, Detective O'Kelley identified Kincade as "Witness 1" because Kincade feared retaliation by King. The surveillance DVR retrieved from King's home revealed that the channel connected to the camera positioned in the back of King's home had stopped recording on June 26, 2015, and began recording again on the evening of June 29, 2015.
Defense counsel filed a preliminary motion asking the circuit court to exclude the telephone recording between King and Detective O'Kelley and to suppress the evidence seized pursuant to the search warrant. After a hearing, the circuit court concluded that the evidence was admissible. Additionally, the State moved in limine to allow witness testimony pursuant to Arkansas Rule of Evidence 803(3) that Price had planned to spend the weekend she was murdered with King; the court granted the motion. King appeals these evidentiary rulings.
II. Telephone Recording between Detective O'Kelley and King
King first argues that the taped audio recording of the telephone conversation between him and Detective O'Kelley should have been excluded pursuant to Arkansas Code Annotated section 5-60-120. In the conversation, King admitted that he had a relationship with Price and that the child she was carrying may have been his.
Section 5-60-120 prohibits a person from intercepting and recording a telephone conversation between two parties unless that person is a party to the communication, or one of the parties has given prior consent to such interception and recording. We considered a similar situation in Elliott v. State , 335 Ark. 387, 389-90, 984 S.W.2d 362, 363 (1998). In that case the defendant's wife recorded telephone conversations between the defendant and his minor stepdaughter, which revealed that the defendant had sex with the minor. Like King, Elliott argued that section 5-60-120 precluded the tape's introduction. This court rejected that argument because while the statute makes the recording of the conversations unlawful, it "does not proscribe the admissibility of an unlawful recording." Id. at 389, 984 S.W.2d 362, 363. We reasoned that "the search and seizure clauses are restraints upon the government and its agents, not upon private individuals; the corollary to this proposition is that the exclusionary rule is not intended as a restraint upon the acts of private individuals." Id. We find this authority *479 persuasive and affirm the circuit court's denial of King's motion in limine to exclude the audio recording.
King also argues on appeal that the recording should have been precluded pursuant to 18 U.S.C. § 2515, which is a statutory exclusionary rule that generally prohibits the introduction into evidence of illegally intercepted communications or evidence derived from illegally intercepted communications. However, King failed to make this argument to the circuit court, so it is not preserved for our appellate review. Hicks v. State , 327 Ark. 652, 941 S.W.2d 387 (1997).
III. Motion to Suppress Evidence Seized from King's Home
King next argues that the circuit court erred in failing to suppress evidence seized from King's home pursuant to a search warrant. These items include a surveillance DVR containing video of activities at his house and photographs taken by police inside and outside his home. This evidence was admitted at trial.[1] King claims the warrant did not present sufficient grounds for the search and seizure of the evidence. In particular, he claims that the affidavit for the warrant prepared by Detective O'Kelley was insufficient because it did not provide any basis for the veracity of "Witness 1."
Arkansas Rule of Criminal Procedure 13.1(b) states that "if an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained." However, failure to establish the veracity and basis of knowledge of persons providing information is not a fatal defect if the affidavit viewed as a whole "provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place." Ark. R. Crim. P. 13.1(b) ; see also Wagner v. State , 2010 Ark. 389, 368 S.W.3d 914. The task of the judge issuing a warrant "is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Brenk v. State , 311 Ark. 579, 588, 847 S.W.2d 1, 6 (1993) (quoting Illinois v. Gates , 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ). In reviewing a trial court's denial of a motion to suppress, we make an independent examination of the issue based on the totality of the circumstances, viewing the evidence in the light most favorable to the State. Stanton v. State , 344 Ark. 589, 42 S.W.3d 474 (2001). We reverse only if the trial court's ruling was clearly against the preponderance of the evidence. Id.
In this case, Detective O'Kelley's affidavit states that "Witness 1," who was later identified as David Kincade, had contacted investigators and informed them that King had confessed to him that he killed Price. The affidavit identifies King as the individual already charged with the capital murder of Price. According to "Witness 1," King stated he killed Price because if his wife found out that Price was pregnant with his child, his wife would divorce him, and he would lose everything. "Witness 1" also detailed how King told him that he had unplugged the surveillance cameras at his house the week before the murder and that on the night of the murder he went *480 out of his back door and ran across a field to the main road where someone picked him up and drove him to Price's house.
This portion of Detective O'Kelley's affidavit was based on hearsay; therefore, it should have stated, but did not state, particular facts bearing on "Witness 1's" reliability. Ark. R. Crim. P. 13(b). However, considering the affidavit as a whole, there was substantial basis for a finding of reasonable cause to believe that evidence of Price's murder would be found in King's home. In addition to the information provided by "Witness 1," the affidavit states how the visibly pregnant victim, Price, was found deceased on her bedroom floor and that a few days before her death she had publicly identified King as the father of her child on Facebook. Therefore, the affiant provided information that supported the reliability and the likelihood of reasonable cause to believe that there would be a DVR in King's home that contained evidence related to the murder. Considering the information provided in the affidavit as a whole, we cannot say that it was clearly against the preponderance of the evidence for the circuit court to deny King's motion to suppress.
On appeal, King also asserts that the motion to suppress should have been granted because Detective O'Kelley failed to state in his affidavit that some of the information "Witness 1" provided to police was inaccurate. See Franks v. Delaware , 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ; State v. Rufus , 338 Ark. 305, 993 S.W.2d 490 (1999). In Franks , the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request". 438 U.S. at 155-56, 98 S.Ct. 2674. However, King did not argue to the circuit court that either Detective O'Kelley's or "Witness 1's" statements were knowingly and intentionally false or made with reckless disregard for the truth, and the circuit court did not make any findings on this issue. See Langford v. State , 332 Ark. 54, 962 S.W.2d 358 (1998). Therefore, we do not consider this argument on appeal because it was not preserved. Hicks , 327 Ark. 652, 941 S.W.2d 387.
IV. Confrontation Clause Violation
Finally, King argues that the circuit court erroneously admitted hearsay testimony regarding Price's statements that she had intended to spend the weekend she was murdered with King. He argues that the admission violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution and article 2, section 10 of the Arkansas Constitution. We find this argument unconvincing because the testimony concerned Price's intent to do something in the future, which this court has repeatedly said is admissible pursuant to Rule 803(3) of the Arkansas Rules of Evidence. State v. Abernathy , 265 Ark. 218, 577 S.W.2d 591 (1979) (holding that witness's statement that the murder victim had said she was going to meet the defendant on the night she was murdered was admissible under Rule 803(3) ); Nicholson v. State , 319 Ark. 566, 892 S.W.2d 507 (1995) (holding that the witness's statement that victim was planning to divorce defendant was admissible). Furthermore, we reject King's invitation to find that this "firmly rooted" hearsay exception violates the Confrontation Clause.
V. Rule 4-3(i)
In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been *481 examined for all objections, motions, and requests made by either party that were decided adversely to appellant. No prejudicial error has been found.
Affirmed.
Hart, J., dissents.
Josephine Linker Hart, Justice, dissenting.
I dissent. Allowing the State to introduce the secretly recorded phone call into evidence was plainly illegal, and the detective's affidavit for the warrant to search appellant's home was constitutionally inadequate.
I. The Recorded Phone Conversation
It is basically undisputed in this matter that both Kincade's surreptitious recording of the phone call at issue and the State's use of that phone call as evidence against King at trial were illegal. Appellant argued to the circuit court before trial:
[W]e would ask in Limine, not as a matter of fourth amendment type or fifth amendment type argument, but an illegally obtained telephone conversation with my client should not be admitted into evidence and used by the State. Albeit, I'm not alleging any misconduct by the State, it's something that was done in violation of the law.
Appellant's argument to the circuit court was and is entirely correct. The law expressly provides that it is illegal to intercept and either record or possess a recording of a phone conversation between two other people without prior consent from either of those people, such as the recording at issue here.[2] The law expressly provides that it is illegal for any court to receive any evidence of the contents, or any evidence derived from the contents, of a recorded phone conversation if the contents were knowingly acquired through the use of an electronic device and then intentionally disclosed to another person, such as the evidence at issue here.[3]
The majority's averment that this court must shield its eyes from such manifestly applicable authority, purportedly because that authority is "outside the nature and scope" of the arguments presented below, is troubling. This court has repeatedly said that the only thing necessary to preserve an issue for appeal is a "specific objection." E.g. , Ellison v. State , 354 Ark. 340, 344, 123 S.W.3d 874, 876-77 (2003). The objection "need not cite specific rules to be sufficient." Id. (emphasis added). As set forth in the excerpt above, Appellant's argument to the trial court was as specific as it could conceivably be without citing the actual rule itself. Furthermore, Elliott v. State , a case that the parties discussed at length with the circuit court before trial and which the circuit judge himself described as a personal "research project" he undertook before ruling on this issue, addressed some of the same *482 title, chapter, and section provisions of federal law that the majority now refuses to consider on appeal. 335 Ark. 387, 389-90, 984 S.W.2d 362, 363 (1998). This court should just apply the law.
II. The Affidavit for the Warrant to Search King's Home
Additionally, the affidavit used to obtain the warrant to search King's house was constitutionally infirm. The sufficiency of an affidavit for a search warrant is governed by the totality-of-the-circumstances test set forth in Illinois v. Gates , 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. " Id. at 238, 103 S.Ct. 2317 (emphasis added). "If an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained." Ark. R. Crim. P. 13.1(b) (emphasis added). Furthermore, "when an officer omits facts from an affidavit, the evidence will be suppressed if the defendant establishes by a preponderance of the evidence that: 1) the officer omitted facts knowingly and intentionally, or with reckless disregard, and 2) the affidavit, if supplemented with the omitted information, is insufficient to establish probable cause." State v. Rufus , 338 Ark. 305, 314-15, 993 S.W.2d 490, 495-96 (1999) ; see also Franks v. Delaware , 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The exclusionary rule's purpose "is to deter -to compel respect for the constitutional guaranty in the only effectively available way-by removing the incentive to disregard it. " Elkins v. United States , 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (emphases added).
Here, the "facts constituting reasonable cause" alleged in Detective O'Kelley's affidavit seeking a warrant to search King's home consisted of the following ten sentences:
1. The affiant states that on June 28, 2015 at 1113 hrs, the North Little Rock Police Department received a 911 call to 1117 N Oaks Lane in reference to a deceased person.
2. The affiant states that upon officer's arrival they made entry to the house located at 1117 N. Oaks and observed a female lying on the floor, naked and visibly pregnant. She appeared to have a gunshot wound to the head.
3. The affiant states that the victim's phone was missing from her house.
4. The affiant states Investigators learned the victim had recently put a post on Facebook identifying Quenton King as the father of her unborn child. The post had been taken down prior to police being notified of this incident.
5. The affiant states that on July 7th, 2015 Investigators made contact with Witness 1 who stated Quenton King confessed to him that he killed Megan Price.
6. The affiant states Witness 1 stated Quenton King stated he did it because if his wife found out Megan was pregnant with his child she would divorce him and he would lose everything.
7. The affiant states Witness 1 stated Quenton King told him that he unplugged his cameras at his house *483 (12717 Secretariat) one week before the incident.
8. The affiant states that Witness 1 stated Quenton King told him the night of the incident he went out his back door and ran across a field to the main road where someone picked him up and took him to the victim's house.
9. The affiant stated Quenton King has been charged with 2 counts of Capital Murder for his involvement in this incident.
10. The affiant states he will assist in the execution of this warrant.
[End of excerpt.]
There are a number of problems with Detective O'Kelley's affidavit. Most obvious is that, in relying (heavily) on hearsay evidence from "Witness 1" without presenting any information concerning Witness 1's veracity, reliability, or basis of knowledge, the affidavit is in plain violation of Ark. R. Crim. P. 13.1(b) and Gates , 462 U.S. at 238, 103 S.Ct. 2317. Not so long ago, this circumstance alone would have required suppression of any evidence seized as fruits from the warrant. See generally Aguilar v. Texas , 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (abrogated by Gates ); Spinelli v. United States , 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) (abrogated by Gates ).
Moreover, as Detective O'Kelley acknowledged at the omnibus hearing, his affidavit omitted other information that was of particular relevance to his request for a warrant to search King's home. For example, the detective included Witness 1's allegation that King confessed to the murder but chose not to include Witness 1's allegation that King said he shot the victim first in the stomach and then the head, when the detective knew that the victim was shot only in the head. This is a significant circumstance. If King confessed to Witness 1, there would be no apparent explanation as to why Witness 1 (through King himself, according to the affidavit) would have gotten that part wrong.
Additionally, King argued at trial that it was disingenuous for the detective to include Witness 1's allegation that King "went out the back door and ran across a field " to meet someone who took him to the victim's house, without also acknowledging that King was still recovering from "ten to fifteen" gunshot wounds to his abdomen, arms, and hands that King had recently suffered in an unrelated incident, which would have made it difficult for him to be "running" anywhere.
These circumstances, had they been included in the detective' affidavit as the law contemplates, would have rendered any allegation from Witness 1 unreliable. The State bears the burden of proof here, and without any corroborating information as to veracity, basis of knowledge, or identity, Witness 1's account adds up to demonstrably mistaken allegations about a deceased person from an unidentified person whom the reviewing judge knows literally nothing about. Moreover, the willful omission of these circumstances from the affidavit takes this case outside the realm of any "good-faith" exception to the exclusionary rule. See United States v. Leon , 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Additionally, the majority's suggestion that King somehow failed to raise this issue is simply misplaced. King rigorously cross-examined the detective and the parties argued at length about these circumstances at the omnibus hearing before trial.
Other than Witness 1's account of King's confession, the only information alleged in the affidavit that even relates to King is the information in paragraph 4 about the *484 victim's Facebook post.[4] The detective's rationale for including this information is readily apparent. His affidavit posits a theory of criminal activity whereby a woman announces on Facebook that she is pregnant and that a particular married man is the father. The married man's fear of his wife's reaction and a potential divorce over the woman's newly announced pregnancy gives the man a motive to kill the woman. So, the man hatches a plan whereby he turns off the cameras at his house and has another individual transport him to the woman's house so that he can kill her without being noticed.
However, this theory would be substantially undercut if the affidavit had reflected that the security cameras at King's house were turned off before the victim made the Facebook post.[5] It is most conspicuous, then, that the detective included at paragraph 7 Witness 1's specific allegation that "King told him that he unplugged his cameras at his house (12717 Secretariat) one week before the incident[,]" but earlier at paragraph 4 only generalized that "Investigators learned the victim had recently put a post on Facebook identifying Quenton King as the father of her unborn child."
In fact, it appears that there is literally no mention of the specific time and date of the victim's Facebook post contained in the entire record. This seems inexplicable, even with the post having been deleted, considering that one of the police officers who testified at trial acknowledged on the witness stand that he took a screenshot of the victim's Facebook post just one hour after it was posted and gave that screenshot to Detective O'Kelley on the Monday following the weekend of the victim's death. In short, every apparent circumstance suggests that the detective had this information when he drafted the affidavit and deliberately omitted it.
The propriety of a search warrant must be assessed considering the circumstances at play when the search warrant is requested. Moreover, the fact that there is no mention of the specific time and date of the victim's Facebook post contained in the entire record, when it seems so inescapable that such information was available, is extremely troubling in the context of this case. The State's improper characterization of the known circumstances to obtain the search warrant at issue here must be deterred.
I dissent.

In addition to the DVR and the photographs, a printout summarizing the activity viewed on the DVR was also admitted.

See Ark. Code Ann. § 5-60-120(a) ("It is unlawful ... to intercept a ... telephonic communication ... and to record or possess a recording of the communication unless ... one of the parties ... has given prior consent[.]").

See 18 U.S.C.A. § 2515 (prohibiting receipt of any evidence of the contents of "any wire or oral communication [that] has been intercepted ... or evidence derived therefrom ... in any trial ... before any court ... if the disclosure ... would be in violation of this chapter ") (emphases added); Id. § 2510(4) (defining "intercept" for purposes of this chapter as "acquisition ... through the use of any electronic ... device[;]"); Id. § 2511(1)(c) (prescribing a violation of this chapter where one "intentionally discloses ... to any other person the contents of any wire, oral, or electronic communication ... having reason to know that the information was obtained through ... interception").

Obviously, paragraph 9 indicates that King had been charged, but the fact that an individual has been charged with a crime has no bearing upon guilt, innocence, or any actual evidence of criminal activity.

Obviously, the printouts entered into evidence at trial indicate that the DVR lost connection to the security cameras on June 26, 2015 and regained connection on June 29, 2015. However, this information was only obtained through the execution of the search warrant; it was not available before then.