Cite as 2022 Ark. 95

# SUPREME COURT OF ARKANSAS
**No.** CR–21–195

| | | |
|---|---|---|
| ROBERT SMITH III | | **Opinion Delivered:** May 5, 2022 |
| | APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-18-929] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE TROY BRASWELL, JUDGE |
| | APPELLEE | AFFIRMED; REMANDED TO CORRECT SENTENCING ORDER. |

**JOHN DAN KEMP, Chief Justice**

Appellant Robert Smith III appeals a Faulkner County Circuit Court order convicting him of capital murder, kidnapping, aggravated robbery, and theft of property and sentencing him to consecutive terms of life, forty years, forty years, and ten years, respectively. For reversal, Smith argues that (1) substantial evidence does not support his capital-murder, kidnapping, and aggravated-robbery convictions; (2) the circuit court erred in denying his motion to suppress evidence; (3) his sentence of life without parole is illegal; (4) the circuit court abused its discretion by admitting text messages between Smith's codefendant, Tacori Mackrell, and Mackrell's girlfriend; (5) the circuit court erred by allowing the State to inquire about three of Smith's prior bad acts; (6) the State impermissibly shifted the burden of proof to the defense while cross-examining Smith; (7) the circuit court abused its discretion during closing arguments by preventing Smith from commenting on the State's failure to call Mackrell as a witness; and (8) the circuit court abused its discretion during sentencing by allowing the State to introduce a music video in which Smith appeared. We affirm but remand for the circuit court to correct the sentencing order.

I. *Facts*

On July 7, 2018, around noon, seventy-two-year-old Elvia Fragstein left her home in her 2018 silver Honda CR-V to go shopping in Conway. When she did not return home that evening, her husband, Helmut, became worried. Fragstein did not have a cell phone with her so Helmut checked her credit-card purchases in an attempt to locate her. She had made purchases that day at Kroger, a liquor store, and TJ Maxx. He called 911 and reported Fragstein missing.

Arkansas State Police Trooper Kevin Helm worked Highway Patrol that day. At 5:00 p.m., Trooper Helm ran the license plate for a silver Honda CR-V that passed him on the southbound side of Interstate 530 a few miles north of Pine Bluff. It was registered to Fragstein, but there was no indication then that the vehicle had been stolen.

Investigators with the Faulkner County Sheriff's Office reviewed surveillance footage from the Conway stores where Fragstein had shopped on July 7. A surveillance video from Kroger on Salem Road showed that after Fragstein finished shopping there, she walked outside to her CR-V, cautiously backed out, and exited the parking lot. Video footage from TJ Maxx in the Conway Commons shopping center revealed that she then shopped there and exited the store at approximately 3:43 p.m.

Exterior cameras from a nearby Target store showed other activity in the Conway Commons parking lot. Videos showed two males arrive at the shopping center a few minutes before 3:00 p.m. They walked around for almost an hour and moved their Chrysler PT Cruiser to several different parking spots during that time. One individual was wearing a white shirt, and the other was wearing a t-shirt with a graphic design on the front and a solid white back. At 3:42 p.m., the individuals walked in front of TJ Maxx. At 3:43 p.m., Fragstein exited TJ Maxx and walked in the same direction. Minutes later, the cameras showed Fragstein's CR-V being driven erratically at a high rate of speed. Video recovered from a nearby UPS store also showed multiple occupants inside

the CR–V, and someone other than Fragstein appeared to be the driver. Investigators were able to get a still-shot photograph of the two males seen in the surveillance footage, and they were later identified as Smith and Mackrell.

On the morning of July 11, a farmer discovered a female body at a Jefferson County farm outside Pine Bluff. The body, which had deteriorated and was infested with maggot and insect activity, was identified through dental records as Fragstein. On July 17, Fragstein's burned CR–V was found in a secluded area of Pine Bluff.

Dr. Stephen Erickson, the deputy chief medical examiner for the Arkansas State Crime Laboratory, performed the autopsy. He testified that Fragstein's body had undergone extensive decomposition, and there was significant tissue loss in her face, neck, and chest areas. Dr. Erickson discovered crushing neck trauma that he classified as strangulation. He found a fractured second cervical vertebra indicating that a high degree of force had been applied to the left side of the neck, crushing the side of that vertebra where an important vessel supplies blood to the brain. He also found six right-rib fractures and two left-rib fractures. Dr. Erickson stated that the right-rib injuries were probably caused by a significant amount of force. He agreed that a person "could get that [type of an injury] if the ribs are stomped or crushed." Dr. Erickson concluded that there was "a severe prolonged multi-factorial assault[;] her cause of death was a combination of the injuries that [he] found—strangulation, blunt force trauma of the chest[,] and blunt force trauma of the cervical spine."

Mackrell's girlfriend, Eriya Evans, testified that Mackrell and Smith are cousins. During the summer of 2018, she lived in an apartment across the street from Smith and his family. She remembered the day that Mackrell went to Conway. She had communicated with Mackrell that day via text message, and he had used a cell phone that she had given him. Evans identified a series of text messages between Mackrell and her from July 7. One text message from him stated, "I just

3

got the texts and when we was up there cuz snatched the purse and shidd, it had $60 in it he got 30 I got 30 I put 20 in the tank and he bought ah 20." Evans explained that before Mackrell's trip to Conway, he never had his own vehicle, but soon afterward, he "popped up with one." At trial, when Evans was shown a photo of Fragstein's CR–V, she responded that it looked like the same car. Evans testified that when she asked Mackrell where he got the vehicle, he became agitated and responded, "We can get around now." Evans testified that Mackrell had driven her to the Dollar Store in the CR–V and had given her a brown purse after returning from Conway.

Another witness, Tashemia Bullard, testified that on July 9 or 10, Mackrell's sister picked her up from her house in a silver CR–V. A day or two later, Mackrell picked Tashemia up in the same CR–V and took her and her son to run an errand. When she retrieved her bags from the car, she opened the trunk and saw a bottle of fingernail polish in a white bag. The CR–V was then parked behind Tashemia's house for about two days. She later told the police about her concern that the vehicle was stolen. Three men eventually came to Tashemia's house in a PT Cruiser and picked up the CR–V. Tashemia's sister, Marquita Bullard, also recalled that three or four men arrived in a blue PT Cruiser to pick up the CR–V. Although Marquita did not actually see any of the men drive off in the CR–V, she identified two of the men as Smith and Mackrell.

Police obtained a search warrant for Smith's residence, and during the search officers recovered several items of clothing, including jeans, a white t-shirt that was air-brushed on one side, and a pair of Nike shoes that appeared to be the ones worn by one of the individuals in the surveillance video. Blood was identified on four different areas of the shoes—the outer side of the left shoe, the outer bottom of the left shoe, the outer bottom of the right shoe, and two spots on the outer bottom of the right shoe. All four of the swabs taken from the Nike shoes matched Fragstein's DNA.

4

Smith testified in his own defense. He stated that on July 7, 2018, when he was sixteen years old, he and Mackrell went to Conway with his mother in her PT Cruiser. They arrived at a bingo hall in Conway, and his mother went inside to play bingo. Smith and Mackrell remained in the car smoking marijuana and listening to music. He claimed that Mackrell also smoked PCP. They left the bingo hall, drove the PT Cruiser to Conway Commons, and walked around. They returned to the car to smoke marijuana, and Mackrell left the car several times. The second time Mackrell left, he came back with a truck and said, "[F]ollow me." Smith drove the PT Cruiser back to the bingo hall and, at Mackrell's request, took the keys to his mother. Smith returned to the truck, and Mackrell yelled at him to get in the driver's seat and drive back to Pine Bluff. Smith looked back and noticed a lot of blood on Mackrell and that he appeared to be "crouching over something." Smith claimed that he could tell it was a person, but he did not hear her make a sound or move. Smith said that he drove all the way back to Pine Bluff and went inside his house. Mackrell then left with the truck. Smith claimed he never caused injury to Fragstein and was not with Mackrell when Mackrell injured her. Smith admitted having gone to the Bullards' house with Mackrell at a later date because someone told Mackrell to move the truck.

Smith admitted on cross-examination that he had talked to the police two different times and told them several lies, including that he was not in Conway on July 7, had never been to Conway, did not know if he had ever ridden in his family's PT Cruiser, and had never seen Fragstein's Honda CR-V. The second time he spoke with police, he admitted that he was in a picture taken from the surveillance footage at Target, but still said that "[he] had nothing to do with it" and that "[he didn't] know anything about it." At trial, Smith admitted that his statement was also a lie.

Smith acknowledged that if Mackrell sent Evans a text saying that "cuz" snatched a purse, Smith was the "cuz" about whom Mackrell was referring. But Smith claimed at trial that Mackrell

5

lied because he did not take the purse. Smith also acknowledged that the shoes found in his house with Fragstein's blood on them belonged to him but claimed that he did not know how the blood got there. Smith also admitted that he had previously been suspended from school for fighting with a teacher and disciplined for chasing a female student down the hall and kicking her. He further admitted that his music name is "MG Glo," and that "MG" stands for "Murder Gang." He claimed that "Murder Gang" was a music group in Pine Bluff and acknowledged that he was in one of its rap videos. He also admitted that its songs are about killing people and that the lyrics of one song are about stomping someone to death.

After deliberations, the jury convicted Smith of capital murder, kidnapping, aggravated robbery, and theft of property. He was sentenced to a cumulative term of life imprisonment plus ninety years. He filed a timely notice of appeal, and this appeal followed.

II. *Points on Appeal*

A. Sufficiency of the Evidence

Smith first argues that the circuit court erred in denying his motion for directed verdict on the capital–murder, kidnapping, and aggravated–robbery charges.[1] Although Smith admits that he drove to and from the crime scene with Mackrell, he contends that there was no evidence he "did anything with the purpose of promoting or facilitating the crimes."

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *McClendon v. State*, 2019 Ark. 88, at 3, 570 S.W.3d 450, 452. In reviewing this challenge, we view the evidence in a light most favorable to the State, considering only the evidence that supports the

---

[1]Although Smith asserts that none of his convictions are supported by substantial evidence, he fails to develop any argument challenging his theft conviction. We do not address arguments that are not supported by authority or convincing argument. *See Sweet v. State*, 2011 Ark. 20, at 18, 370 S.W.3d 510, 523.

verdict. *Id.*, 570 S.W.3d at 452. We will affirm the verdict if substantial evidence supports it. *Id.*, 570 S.W.3d at 452. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*, 570 S.W.3d at 452. Circumstantial evidence may constitute substantial evidence to support a conviction. *Finley v. State*, 2019 Ark. 336, at 2, 587 S.W.3d 223, 226. For circumstantial evidence to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* at 3, 587 S.W.3d at 226. Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.*, 587 S.W.3d at 226.

Smith committed capital-felony murder if, acting alone or with another person, he committed or attempted to commit the offense of robbery or kidnapping, and, in the course of and in furtherance of the felony or in immediate flight therefrom, he or a person acting with him, caused the death of a person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-101(a)(1)(A)(iii), (v) & (B) (Supp. 2017 reprint). Smith committed aggravated robbery if, with the purpose of committing a felony or misdemeanor theft, he employed or threatened to employ physical force upon another person and was "armed with a deadly weapon" or inflicted death upon another person. Ark. Code Ann. § 5-12-103 (Repl. 2013). Finally, Smith committed kidnapping if, without consent, he restrained another person so as to interfere substantially with the other person's liberty with the purpose of facilitating the commission of any felony or flight after the felony, inflicting physical injury upon the other person, or terrorizing the other person. Ark. Code Ann. § 5-11-102(a)(3), (4) & (6) (Repl. 2013).

In cases implicating a theory of accomplice liability, we will affirm if substantial evidence exists that the defendant acted as an accomplice in the commission of the alleged offense. *Finley*, 2019 Ark. 336, at 2, 587 S.W.3d at 226. A person acts as an accomplice of another person if, with

7

the purpose of promoting or facilitating the commission of the offense, the person aids, agrees to aid, or attempts to aid in planning or committing the offense. *See* Ark. Code Ann. § 5-2-403(a)(2) (Repl. 2013). When causing a particular result is an element of an offense, a person is an accomplice of another in the commission of an offense if "acting with respect to that particular result with the kind of culpable mental state sufficient for the commission of the offense, the person . . . [a]ids, agrees to aid, or attempts to aid the other person in committing it." Ark. Code Ann. § 5-2-403(b)(2) (Repl. 2013). Relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in proximity to a crime, the opportunity to commit the crime, and an association with a person involved in a manner suggestive of joint participation. *Gilcrease v. State*, 2009 Ark. 298, at 12, 318 S.W.3d 70, 79. A defendant is an accomplice if he or she renders the requisite aid or encouragement to the principal with regard to the offense at issue, irrespective of the fact that the defendant was not present at the murder scene and did not directly commit the murder. *Id.*, 318 S.W.3d at 79.

Here, with regard to his aggravated-robbery conviction, Smith contends that the State failed to present substantial evidence that he had the purpose to commit a theft or that he employed physical force against Fragstein. On his kidnapping conviction, Smith contends that Fragstein was already dead while he got into her CR–V, so the State failed to prove that he restrained her at any point when she was alive. Finally, on the capital-felony–murder conviction, Smith again argues that Fragstein was already dead when he got into her vehicle and that the State presented insufficient evidence of the underlying felonies of either kidnapping or robbery.

The State presented evidence that Smith participated in the kidnapping and aggravated robbery. On July 7, Smith and Mackrell walked the same direction as Fragstein about a minute before she exited TJ Maxx, and just before her Honda CR–V was seen being driven erratically at a high rate of speed. Mackrell sent his girlfriend a text message telling her that Smith "snatched the

8

purse," after which he and Mackrell divided up the $60 that was in the purse. Smith drove Fragstein's stolen CR-V from Conway to Pine Bluff with Fragstein inside. She was found murdered four days later. Smith also went with Mackrell to the Bullards' house to move Fragstein's stolen CR-V after someone requested that Mackrell move it.

The State also presented evidence that Smith participated in the capital-felony murder. Dr. Erickson testified that Fragstein suffered a "severe, prolonged and multi-factorial" assault and that her injuries were consistent with someone "stomping" on her. Smith admitted that he is in a music group that has songs about killing people and stomping someone to death. And Fragstein's blood was found at multiple locations on Smith's shoes. Although Smith testified that he did not injure Fragstein and that she appeared to be dead when he got into her CR-V, the jury was not required to believe Smith's testimony. *See Price v. State*, 2019 Ark. 323, at 6, 588 S.W.3d 1, 5. Finally, he lied to police multiple times about his involvement in the crimes, which could be considered by the jury as circumstances tending to establish guilt. *See Hyatt v. State*, 2018 Ark. 85, at 12–13, 540 S.W.3d 673, 680.

We hold that the evidence above, viewed in the light most favorable to the State, constitutes substantial evidence of Smith's participation as an accomplice in the capital-felony murder, kidnapping, and aggravated robbery of Fragstein. *See* Ark. Code Ann. § 5-10-101(a)(1)(A)(iii), (v) & (B) (capital-felony murder); Ark. Code Ann. § 5-11-102(a)(3), (4), and (6) (kidnapping); Ark. Code Ann. § 5-12-103 (aggravated robbery). Thus, we affirm on this point.

## B. Motion to Suppress Evidence

Smith next argues that the circuit court's denial of his motion to suppress evidence found in the search of his residence was clearly against the preponderance of the evidence. He claims that the search-warrant affidavit did not describe any circumstances showing that evidence of the crimes against Fragstein would be discovered at Smith's residence.

Arkansas Rule of Criminal Procedure 13.1(b) states that an "application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized[.]" Ark. R. Crim. P. 13.1(b). It must be supported by affidavit or testimony before a judicial officer "particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched." *Id.* "An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place." *Id.* The task of the judge issuing a search warrant is to make a "practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *King v. State*, 2019 Ark. 114, at 5, 571 S.W.3d 476, 479 (omission in original). In reviewing a denial of a suppression motion, this court makes an independent examination based on the totality of the circumstances, viewing the evidence in the light most favorable to the State, and we reverse only if the circuit court's ruling was clearly against the preponderance of the evidence. *Id.* at 5–6, 571 S.W.3d at 479.

Here, the affidavit supporting the search warrant stated that the affiant, Jefferson County Investigator Johnathan Powell, had reason to believe that on the premises or inside Smith's residence

> there is now being concealed certain property or persons, namely: Any property believed to belong to Elvia Fragstein, property or documents identifying Elvia Fragstein or her 2013 Honda CRV, any electronic communications devices believed to belong to Robert Smith, and any property believed to be related to the crimes of kidnapping, theft of a vehicle, and capital murder[.]

A "continuation for affidavit," which was attached to the affidavit, contained a sworn statement by Investigator Powell detailing the following facts in support of his request: the finding of a female body on July 11; the discovery the next day that the victim was Fragstein, who had gone missing from a Conway shopping center on July 7; his review of video surveillance from Conway Commons showing two black males in a blue Chrysler PT Cruiser moving to different parking

spots several times, and eventually parking near Fragstein's vehicle; the identification of the two males as Smith and Mackrell; a description of their clothing, including that one had a "distinctive graphics t-shirt with multiple people printed on it and jeans"; Mackrell's cell-phone records showing that he was in Conway around the time of Fragstein's disappearance and discussing getting rid of the truck; Mackrell's text message to Evans on July 10, "I'm sorry for getting loud it's just Tasha say on the news on Conway ah truck got stolen I'm finna get off of it today or tomorrow"; Mackrell's July 15 statement to police officers that Smith's mother, LaTasha, identified in Mackrell's texts as "Tasha," had driven Smith and Mackrell to Conway on July 7; and Smith's arrest at the residence in question.

> After a hearing, the circuit court denied Smith's motion and found that
>
> [t]he examination of the four-corners of the document, the affidavit, and the continuation for affidavit provides this Court with the information to conclude that probable cause existed. Further, the information establishes a nexus with the items located during the search under *Johnson v. State*, 2015 Ark. 387. Therefore, the motion to suppress is DENIED.

We agree with the circuit court that the affidavit and continuation for affidavit established a nexus between Smith's residence and the items sought in the investigation of the crimes committed against Fragstein. *See, e.g.*, *Johnson v. State*, 2015 Ark. 387, at 6, 472 S.W.3d 486, 489. The affidavit placed Smith with Mackrell at the time Fragstein disappeared, and it described in detail the clothing worn by Smith that day. It stated that Smith had been arrested at that residence. It established a close relationship between Mackrell, Smith, and Smith's mother. It also indicated that Smith's mother warned Mackrell that police were looking for the stolen CR–V.[2] Given these facts, we hold that the circuit court's conclusion that the affidavit established probable cause for a search

---

[2]On July 16, when the search warrant was issued, the stolen CR–V had not yet been found. It was found the following day.

of the home shared by Smith and his mother was not clearly against the preponderance of the evidence. Therefore, we affirm the circuit court's denial of Smith's motion to suppress.

## C. Smith's Life-Without-Parole Sentence

Smith next argues that his sentence of life imprisonment without the possibility of parole for his capital-murder conviction was illegal because Arkansas law does not allow a juvenile to be sentenced to life without parole for any homicide offense. He argues that we should remand to the circuit court for his sentence to be modified.

Arkansas Code Annotated section 5-10-101(c)(1)(B) (Supp. 2017 reprint) provides,

Capital murder is punishable as follows:

. . .

(B) If the defendant was younger than eighteen (18) years of age at the time he or she committed the capital murder, life imprisonment with the possibility of parole after serving a minimum of thirty (30) years' imprisonment.

Here, it is undisputed that Smith was sixteen years old at the time of the capital murder. Thus, he was ineligible for a sentence of life without the possibility of parole.

The State contends that the life-without-parole notation on Smith's sentencing order appears to be a clerical error because all parties below agreed that Smith would be eligible for parole on his capital-murder conviction after thirty years.

When there is a discrepancy between the sentencing order and the pronouncement of sentence, the sentencing order controls. *Martinez v. State*, 2019 Ark. 85, at 2, 569 S.W.3d 333, 335. But clerical errors do not prevent enforcement of a judgment, and a circuit court can enter an order nunc pro tunc at any time to correct clerical errors in a judgment. *Id.*, 569 S.W.3d at 335. We therefore remand and instruct the circuit court to correct the sentencing order so that it accurately reflects that Smith was sentenced to "Life" for capital murder, which in his case means that he is eligible for parole after thirty years.

Additionally, Smith argues that he is "entitled to parole eligibility at thirty years across the board on all of his offenses" and asks that, on remand, his sentencing order "be corrected accordingly." Smith does not argue that his sentences for kidnapping, aggravated robbery, and theft were illegal. His challenge is solely to parole eligibility. Parole eligibility falls clearly within the domain of the executive branch and specifically the Arkansas Division of Correction, as fixed by statute. *Johnson v. State*, 2012 Ark. 212, at 5. Thus, on the basis of this precedent, we lack jurisdiction to instruct the circuit court to apply specific parole statutes to Smith's kidnapping, aggravated-robbery, and capital-murder convictions.

## D. Text Messages[3]

Smith next argues that the circuit court abused its discretion in admitting three exhibits—State's exhibits 50, 110, and 111—over his hearsay objections. The circuit court admitted State's exhibits 50 and 110 on two bases—as nonhearsay statements made by a co-conspirator in furtherance of the conspiracy under Rule 801(d)(2)(v) of the Arkansas Rules of Evidence and as statements of the declarant's then existing state of mind, emotion, sensation, or physical condition under Rule 803(3) of the Arkansas Rules of Evidence. The circuit court also admitted State's exhibit 111—a series of five questions sent from Evans to Mackrell—because it was not offered for the truth of the matter asserted.

Circuit courts have broad discretion in deciding evidentiary issues, and we will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion. *Collins v. State*, 2019 Ark. 110, at 5, 571 S.W.3d 469, 472. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act

---

[3]We address Smith's next two points on appeal in tandem because both involve challenges to the circuit court's admission of text messages between Mackrell and Evans.

improvidently, thoughtlessly, or without due consideration. *Id.*, 571 S.W.3d at 472. Furthermore, we will not reverse unless the appellant demonstrates that he was prejudiced by the evidentiary ruling. *Id.*, 571 S.W.3d at 472.

"'Hearsay'" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ark. R. Evid. 801(c). A statement is not hearsay if it is "offered against a party" and it is a "statement by a coconspirator of a party made during the course and in furtherance of the conspiracy." Ark. R. Evid. 801(d)(2)(v). Additionally, Arkansas Rule of Evidence 803(3) allows for hearsay statements, even if the declarant is available, as evidence of a "declarant's then existing state of mind . . . such as intent, plan, motive, design . . . but not including a statement of memory or belief to prove the fact remembered or believed[.]"

1. *State's exhibit 50*

State's exhibit 50 was a text message from Mackrell to Evans at 11:31 p.m. on July 7, 2018, stating, "I just got the texts and when we was up there cuz snatched the purse and shidd it had 60 dollars in it he got 30 I got 30 I put 20 in the tank and he bought ah 20."[4] In addressing admissibility of the exhibit under Arkansas Rule of Evidence 801(d)(2)(v), the circuit court ruled from the bench that a conspiracy existed between Smith and Mackrell—who sent the text message at issue. The court based its ruling on the photographs of them together at the scene where Fragstein went missing, Smith driving Fragstein's CR–V to Pine Bluff, Mackrell and Smith arriving at the Bullard residence after someone called Mackrell to come get the CR–V, and Fragstein's blood on Smith's shoe. The circuit court also ruled that the statement was made in the course of and in furtherance of the conspiracy because it "discussed the disbursement of . . . some of the gains from the

---

[4]Smith also challenges State's exhibit 53, which is an enlarged copy of exhibit 50.

conspiracy[,]" and was "still in the course of the theft of property[.]" Thus, it found that State's exhibit 50 was admissible as a nonhearsay statement of a co-conspirator.

We agree with the circuit court's ruling. First, we see no error in the finding that there was conspiracy between Smith and Mackrell for the reasons articulated by the circuit court as well as Smith's own testimony about his participation in the crimes. Second, the circuit court's conclusion that the message was sent during the course of the conspiracy was not erroneous because it was sent the night that Fragstein went missing. Several days later, Smith and Mackrell went to the Bullards' house after Mackrell was asked to move the CR-V. Additionally, Fragstein's body was discovered on July 11, and her CR-V was found on July 17. The conspiracy between Smith and Mackrell had not concluded when Mackrell sent the text. Third, we agree that the statement was made in furtherance of the conspiracy. This court has previously addressed the "in furtherance of" requirement:

> Although this court has had few opportunities to discuss the "in furtherance of" element of Rule 801(d)(2)(v), it has held that statements designed to further the specific objective of the conspiracy are made in furtherance of the conspiracy. Federal cases interpreting the corresponding federal rule of evidence hold that this requirement should be interpreted broadly. Thus, statements that have an overall effect of facilitating the conspiracy or that somehow advance the objectives of the conspiracy are said to be in furtherance of the conspiracy.

*Dyer v. State*, 343 Ark. 422, 429, 36 S.W.3d 724, 728 (2001) (internal citations omitted).

In this case, the text message stating that "cuz snatched the purse" was admitted into evidence after Evans testified about her receipt of a brown purse following Mackrell's trip to Conway. That text message also stated that Mackrell "put 20 in the tank." Evans testified that, a few days after his trip to Conway, Mackrell drove her to the Dollar Store in a vehicle that looked like Fragstein's CR-V. Evans further admitted that she had taken a photograph of herself inside the CR-V. Given Evans's testimony about receiving a purse and riding in the CR-V, we conclude that Mackrell's text message to her was made in the furtherance of the conspiracy. Thus, we hold that

15

the circuit court did not abuse its discretion by admitting State's exhibit 50 under Rule 801(d)(2)(v).[5]

### 2. *State's exhibit 110*

State's exhibit 110 was a series of five text messages that Mackrell and Evans exchanged between 8:04 p.m. and 8:10 p.m. on July 7. Although Smith challenges the entire exhibit, he alleges that he was prejudiced by only a single text message within that exhibit—a message from Mackrell to Evans stating, "[C]ause we not finna park this truck there and don't you got eniya unless she coming." The circuit court rejected Smith's hearsay objection to this exhibit, ruling that it was admissible under Rule 803(3) of the Arkansas Rules of Evidence because it showed Mackrell's state of mind—his "intent to not park the truck there."

We agree that this statement concerned Mackrell's intent to do something in the future, which this court has said is admissible pursuant to Rule 803(3). *See King*, 2019 Ark. 114, at 8, 571 S.W.3d at 480. Accordingly, we hold that the circuit court did not abuse its discretion in admitting State's exhibit 110.

### 3. *State's exhibit 111*

State's exhibit 111 was a series of five text messages from Evans to Mackrell between 4:35 p.m. and 6:53 p.m. on July 7. Smith argues that two of the text messages within that exhibit were inadmissible because they were offered to prove the truth of the matter asserted. First, he asserts that Evans's message to Mackrell ending in "cause you been from Conway," was a statement offered to show that Mackrell had been in Conway for an extended period of time. Second, he contends

---

[5]We need not address the circuit court's alternative ruling that exhibit 50 was admissible under Rule 803(3).

that a text stating, "So you at the crib an can text me back" was a written assertion that Mackrell was back home in Pine Bluff.

We have stated that merely cumulative evidence is not prejudicial. *Davis v. State*, 368 Ark. 401, 411, 246 S.W.3d 862, 871 (2007). We will not reverse unless an appellant demonstrates that he was prejudiced by an evidentiary ruling. *Collins*, 2019 Ark. 110, at 5, 571 S.W.3d at 472. State's exhibit 111 is duplicative of surveillance footage of Smith and Mackrell at the Conway Commons shopping center as well as Smith's own testimony that he was in Conway with Mackrell the afternoon of July 7. Because Smith has failed to show any prejudice in the admission of Exhibit 111, we hold that the circuit court did not abuse its discretion in admitting it.

E. Prior Bad Acts

Smith next argues that the circuit court abused its discretion by allowing the State to question him about three prior bad acts in violation of Rules 403 and 404(b) of the Arkansas Rules of Evidence.

On cross-examination at trial, Smith testified that he remembered the police telling him what had happened to Fragstein, and he told the police that he would not put himself in a situation like that. On redirect examination, Smith testified as follows:

| [DEFENSE COUNSEL]: | Do you remember [the prosecutor] asked you about putting yourself in this situation? |
|---|---|
| [SMITH]: | Yes, sir. |
| [DEFENSE COUNSEL]: | That's not the kind of person you are, correct? |
| [SMITH]: | No, sir. |

The prosecutor then argued to the circuit court in a bench conference that Smith's responses had opened the door to questioning about Smith's previous incidents related to his character. The circuit court ruled that Smith had opened the door to otherwise inadmissible character evidence, and it

17

allowed the State to question Smith about three prior bad acts—a previous suspension from school for fighting with a teacher, being disciplined for chasing a female student down the hall and kicking her, and his participation as "MG Glo," in the music group "Murder Gang."

In admitting the evidence, the circuit court relied on *Smallwood v. State*, 326 Ark. 813, 935 S.W.2d 530 (1996). There, Smallwood's attorney asked him, "Did you threaten [the victim] with a knife or with anything?" Smallwood responded, "No, I didn't threaten her with a knife. *I'm not that type of person.* I didn't threaten her with a knife." *Id.* at 819, 935 S.W.2d at 533 (emphasis in original). This court recognized that

> otherwise inadmissible testimony may be offered when one party has opened the door for another party to offer it. This is most often permitted when a defendant has been untruthful about a former crime or *has brought up otherwise inadmissible character evidence which the State may then rebut.*

*Id.* at 819, 935 S.W.2d at 533. (emphasis in original) (quoting *Larimore v. State*, 317 Ark. 111, 120, 877 S.W.2d 570, 574 (1994)). In *Smallwood*, by claiming that he was not the "type of person" to threaten someone with a knife, Smallwood placed his propensity toward violence in issue. *Id.*, 935 S.W.2d at 533. We held that the circuit court properly allowed the State to question Smallwood about other violent acts or threats. *Id.*, 935 S.W.2d at 533.

*Smallwood* is dispositive of the issue here. Smith's own testimony elicited by his trial counsel opened the door to questioning about his propensity toward violence. Smith claimed that he was "not the kind of person" to place himself in a kidnapping-robbery-murder scenario in which the victim suffered a "severe prolonged multi-factorial assault." Thus, we hold that the circuit court did not abuse its discretion by finding that Smith opened the door to evidence of his past violent acts and participation in a music group that has songs about killing people and stomping someone to death. We therefore affirm on this point.

Smith next argues that the circuit court abused its discretion by permitting the prosecutor

to shift the burden of proof to him during the following line of questioning:

| [PROSECUTOR]: | Okay. And you would agree that all the videos that were in evidence in this case and jury have seen, none of them show the PT Cruiser in this time frame before Trooper Helm clocks y'all on Interstate 530, that the PT Cruiser is never seen leaving the Conway Commons, is it? |
|---|---|
| [SMITH]: | I guess you guys didn't do enough backing up for the video because it had to have— |
| [PROSECUTOR]: | Okay. |
| [SMITH]: | –left the Conway Commons to get back to the Bingo hall, right? |
| [PROSECUTOR]: | But you would agree that all the videos that are in evidence in this case during this time period don't ever show the PT Cruiser leaving, do they? |
| [SMITH]: | No, ma'am. No, ma'am. |
| [PROSECUTOR]: | Okay. All right. And you've chosen to testify willingly here today, haven't you? |
| [SMITH]: | Yes, ma'am. |
| [PROSECUTOR]: | And if you thought you had a way to prove that with some video, you would show that, wouldn't you? |
| [SMITH]: | I don't have access to videos. |

Smith's trial counsel then objected on the basis that the prosecutor attempted to shift the burden of

proof to Smith. The State responded that its questions were in response to Smith's testimony that

the State did not back up the surveillance video far enough to show the PT Cruiser leaving Conway

Commons in the time period he claimed. The circuit court overruled Smith's objection.

For reversal, Smith relies on *Cook v. State*, 316 Ark. 384, 872 S.W.2d 72 (1994), in which

this court held that a prosecutor's comment in closing argument "[a]t most" constituted "an attempt

to shift the burden of proof[.]" *Id.* at 387, 872 S.W.2d at 74. However, the court affirmed the denial of a mistrial motion because the circuit court's limiting instruction had cured any error. *Id.*, 872 S.W.2d at 73–74.

Here, we agree that Smith opened the door to the State's questions when he suggested that the State had not shown the part of the video that would confirm his testimony. Moreover, Smith did not request a mistrial or a limiting instruction, as was given in *Cook*. Any possible prejudice could have been easily cured by an admonishment, which defense counsel did not request. *See, e.g.*, *Noel v. State*, 331 Ark. 79, 89, 960 S.W.2d 439, 444 (1998). Thus, we conclude that the circuit court properly rejected Smith's burden-shifting argument, and we affirm on this point.

### G. Refusal to Allow Comment on Mackrell's Absence as a Witness

Next, Smith argues that the circuit court abused its discretion by refusing to allow his trial counsel to comment on the State's failure to call Mackrell as a witness at trial.

During guilt-phase closing argument, Smith's trial counsel stated,

> They tell you about a text message. They said Tacori says that "cuz snatched the purse." Now first of all, I'm amazed that all of a sudden they wanted to listen to the same man that we all know is a violent vicious killer. So, all of a sudden now his telling—[Mackrell's] words should be credible. But we don't have him here to ask him, okay, explain to us why you say that, how you come to say that, and whatever. We don't have any of that stuff.

The State objected on the basis that "the State cannot call a co-defendant so that's an improper[,] misleading argument to the jury." After some discussions, Smith's trial counsel responded, "But I'm not saying anything else about this issue[.]" Thus, before the circuit court could rule on the objection, Smith's trial counsel announced that he would refrain from further mentioning Mackrell's not testifying at trial. We therefore hold that Smith's argument is unpreserved for our review, and we affirm without addressing it. *See Hamilton v. State*, 348 Ark. 532, 537–38, 74 S.W.3d 615, 618 (2002).

20

H. Introduction of Music Video at Sentencing

Finally, Smith argues that the circuit court abused its discretion in the sentencing phase of trial by permitting the State to introduce, over Smith's objection, a "Murder Gang" music video featuring Smith. When the State announced its intent to introduce two "Murder Gang" music videos at sentencing, Smith's attorney objected only to the video in which Smith did not appear. The circuit court agreed and excluded that video as evidence. Smith's attorney did not object to the one in which Smith did appear. Before that video was played for the jury, Smith's attorney stated, "Over the same objection that I had."

Smith now contends that the music video in which he appeared was not relevant and that its admission was incredibly prejudicial. Because that specific objection was not made below, we hold that Smith's current argument is unpreserved. *Friday v. State*, 2018 Ark. 339, at 6, 561 S.W.3d 318, 322. We therefore affirm on this point.

III. *Rule 4-3(a)*

Because Smith received a life sentence, this court, in compliance with Arkansas Supreme Court Rule 4–3(a), has examined the record for all objections, motions, and requests made by either party that were decided adversely to Smith. No prejudicial error has been found.

Affirmed; remanded to correct sentencing order.

WOMACK, J., concurs.

**SHAWN A. WOMACK, Justice, concurring.** I join the majority's decision to affirm Robert Smith's convictions for capital murder, kidnapping, and aggravated robbery. But I write separately to note it is preferable to affirm Smith's sentence as modified rather than remand the matter to the circuit court. To efficiently administer justice, this court may correct an illegal sentence, particularly when the illegality stems from an apparent clerical error in the sentencing order. *See Walden v. State*, 2014 Ark. 193, at 11, 433 S.W.3d 864, 871 (holding that "[b]ecause neither issue relates to [the

21

defendant's] guilt, we can correct the sentence in lieu of remanding"). Remanding is a needless waste of resources for both parties, the trial court, the clerks and other employees. The best disposition is to affirm Smith's sentence as modified: life imprisonment.

Therefore, I respectfully concur.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Sr. Ass't Att'y Gen.; and *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.